Anthony **ALEXANDER,** Petitioner,

v.

**UNITED STATES of America,**
**Respondent.**

No. 97–9087.

United States Court of Appeals,
Seventh Circuit.

Submitted July 23, 1997.

Decided Aug. 8, 1997.

Before LAY, * EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

For the third time since Congress enacted the Antiterrorism and Effective Death Penalty Act, Anthony Alexander has sought to commence a successive collateral attack on his criminal conviction. Before the AEDPA took effect, Alexander's conviction was affirmed on direct appeal, No. 93–3465, 1994 WL 556682 (7th Cir. Oct. 7, 1994) (unpublished order), and he filed a collateral attack, which we rejected, No. 95–2910, 1996 WL 87495 (7th Cir. Feb. 27, 1996) (unpublished order). So the current application is his fourth effort to wage a collateral challenge. Each of the four has had the same theme: that his attorneys rendered ineffective assistance. We have addressed and resolved this contention twice before. When rejecting the first collateral attack we wrote:

> Alexander did not argue on direct appeal that his lawyer was ineffective for failure to procure suppression of adverse evidence. But he *did* argue that his lawyer was ineffective. He contended that the district judge's decision to admit certain telephone records nullified his lawyer's trial strategy and deprived him of the effective assistance of counsel. We considered and rejected this argument on the merits. A petition under § 2255 is not an appropriate way to add a new wrinkle to a theme advanced, and resolved, on direct appeal. *United States v. Taglia*, 922 F.2d 413 (7th Cir.1991).

Each of Alexander's three later efforts to commence a collateral attack depends on the proposition, which he candidly articulates in his current application, that "the United States Court of Appeals for the Seventh Circuit misconstrued the defendant's arguments on direct appeal". Alexander tells us that he hadn't really raised an ineffective-assistance claim on direct appeal (at least, his lawyer didn't do so effectively), which in his view led

Anthony Alexander (submitted), Federal Correctional Institution, Pekin, IL, for Petitioner.

Juanita S. Temple, Office of the Untied States Attorney, Criminal Appellate Division, Chicago, IL, for Respondent.

* Hon. Donald P. Lay, of the Eighth Circuit, sitting by designation in accord with Operating Procedure 6(c), which provides that motions for leave to commence successive collateral attacks will be submitted to the panel that heard earlier appeals.

the district judge and us to slight the arguments in his first § 2255 petition—although both courts addressed them on the merits. See also *Holman v. Page*, 95 F.3d 481 (7th Cir.1996), which holds that an ineffective-assistance claim may not be based on a lawyer's failure to invoke the exclusionary rule, because the introduction of probative evidence is not the sort of prejudice that is required for such a claim. Nonetheless, Alexander believes that we made a mistake and should correct it by looking at the subject afresh and ordering his release from prison.

Section 2255, as amended by the AEDPA, provides:

A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

The reference to § 2244 also activates an additional limit in that section: "A claim presented in a second or successive ... application ... that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1). See *Bennett v. United States*, 119 F.3d 470, 471 (7th Cir. 1997). When rejecting Alexander's three prior applications for leave to file new § 2255 petitions, we concluded that the statutory standard had not been met. Alexander made his ineffective-assistance claim before, so the application "shall be dismissed." Even if his contentions were novel, they would fail because he does not point to any new rule made retroactive by the Supreme Court and does not have new evidence showing his innocence.

▇▇▇ What Alexander does say is that the AEDPA does not apply to him, despite the · fact that his motions were filed after April 24, 1996. Alexander made that contention in

his last application, too, and we rejected it. *Alexander v. United States*, No. 96–9063 (7th Cir. June 4, 1997) (unpublished order):

Alexander argues that, under *Burris v. Parke*, 95 F.3d 465 (7th Cir.1996) (en banc), he need not satisfy the statutory standard, because his first collateral attack predated the AEDPA. This contention was resolved adversely to him when he filed his second collateral attack. We observed then, and reiterate now, that the new law applies because Alexander has not furnished any evidence that, when omitting issues from his first collateral attack, [begun] in 1995, Alexander relied on a plausible belief that the approach then governing—the "abuse of the writ" doctrine detailed in *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)—would have permitted a successive collateral attack. Trying to get around this problem, Alexander contends that the lawyer who represented him in the first collateral attack was the same one who (in Alexander's view) rendered ineffective assistance at trial and on appeal. That argument collides with the principle of *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), that ineffective assistance of counsel during a collateral attack is not a ground for relief.

See also *Roldan v. United States*, 96 F.3d 1013 (7th Cir.1996); *Nuñez v. United States*, 96 F.3d 990 (7th Cir.1996). *Bennett* establishes that the rejection of a motion for leave to file a second or successive collateral attack is "on the merits" in the sense that it rejects the arguments advanced by the petitioner as justification for a successive filing. Rejected justifications may not be reiterated in a successive motion for leave to file. Doctrines of preclusion (res judicata and collateral estoppel) are fully applicable. Thus not only theories that were raised in a petition, but also theories that could have been raised but were not, are precluded. Alexander cannot now contest the conclusion that the AEDPA applies—just as the Supreme Court applied it to Ellis Felker, whose application was filed shortly after the statute's enactment. See *Felker v. Turpin*, —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). Indeed Alexander cannot raise any claim at all, unless

the basis for that claim first became apparent after June 4, 1997, when we rejected his most recent application. Alexander does not contend that anything of legal significance happened between June 4 and July 23, when he filed the application we now address. His papers contain nothing but efforts to ring changes on points he has advanced before.

■■ What should a court do with a prisoner who refuses to take no for an answer, and files over and over again? Judicial resources are limited and should be used to provide initial hearings rather than being diverted to repetitious claims. The AEDPA is designed to bring successive petitions to a halt. Yet the usual means of control, both financial and jurisprudential, do not apply to applications for leave to commence successive collateral attacks. No filing fee is prescribed, and anyway we have held that the Prison Litigation Reform Act does not apply to collateral attacks on criminal convictions. *Martin v. United States*, 96 F.3d 853 (7th Cir.1996). Our last order informed Alexander that our patience had been exhausted: "Alexander must understand that AEDPA applies to his claims. Any further effort to begin a collateral attack without satisfying the standard of the new law will lead to sanctions." But what sanction can be effective? Alexander must have concluded that he has nothing to fear, because he filed another application, ignoring the AEDPA's standards despite our instructions, as fast as he could type it up. The problem with money sanctions is that prisoners don't pay, tapping the prisoner's trust account under the PLRA is not an option given the conclusion of *Martin* that the PLRA is inapplicable, and the remedy we have devised for people who ignore sanctions—blocking the filing of new suits until the money has been paid, see *Newlin v. Helman*, 123 F.3d 429, 436–37 (7th Cir.1997); *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir.1995)—has an exception for collateral attacks on convictions. Thus we held in *Smith v. Gilmore*, 111 F.3d 55 (7th Cir.1997), that although the filing of a frivolous collateral attack may justify monetary sanctions, the court could not refuse to receive new papers in order to enforce those sanctions.

*Smith* condones an order deferring *consideration* of applications while sanctions remain unpaid. Problem: an application for leave to file a successive collateral attack "must be certified as provided in section 2244", and § 2244(b)(3)(D) says that the court of appeals must act within 30 days. We have concluded that this time limit governs petitions under § 2255. If deferral can't exceed 30 days, the ability to collect a sanction is diminished.

■ Two options remain. First, we can enter a standard *Mack* order, which will at least give Alexander some incentive to pay if he wants to engage in civil litigation *other* than a collateral attack. In connection with this order we will notify Alexander's prison of the fine; perhaps the Bureau of Prisons will set aside a portion of his income for payment under its Inmate Financial Responsibility Program even though the PLRA is not directly applicable. Second, we can and do provide that any future applications for leave to file successive collateral attacks will be *deemed* rejected, without the need for judicial action, on the 30th day, unless the court orders otherwise. That will reduce the burden of paper-moving and explanation-writing, conserving a little judicial time for litigants who deserve attention. We will read any future application Alexander files, even though we will not necessarily enter an order addressing it, so Alexander will not lose the benefit of any decision made retroactive by the Supreme Court. Given the high hurdle established by § 2255 and the holding of *Bennett*, Alexander should not treat this as an invitation to keep filing; it is not.

■ One final issue requires brief discussion: the source of authority to impose a monetary sanction. Civil Rule 11 does not apply in the court of appeals, and Fed. R.App. P. 38 authorizes awards of damages only if an "appeal is frivolous". This proceeding is an original action rather than an appeal. Perhaps it is possible to read "appeal" to mean "proceeding in the court of appeals", but we need not decide whether the language is so encompassing. Then there is 28 U.S.C. § 1927, which says that a lawyer and anyone else admitted to practice in a

court who "multiplies the proceedings ... unreasonably and vexatiously" may be amerced. 28 U.S.C. § 1927. Multiplication of proceedings is exactly what Alexander has done. Although "vexatiously" implies that sanctions usually depend on bad intent, *In re TCI Ltd.*, 769 F.2d 441 (7th Cir.1985), holds that an award also is appropriate when objectively unreasonable litigation-multiplying conduct continues despite a warning to desist. Alexander was warned, he persisted, and his acts are objectively unreasonable. Nonetheless, because there is a conflict among the circuits on the question whether § 1927 applies to *pro se* litigants, compare *Wages v. IRS*, 915 F.2d 1230, 1235–36 (9th Cir.1990) (yes), with *Sassower v. Field*, 973 F.2d 75, 80 (2d Cir.1992) (no), we look elsewhere for authority rather than choose sides unnecessarily. Authority is not hard to find. Courts have inherent powers to protect themselves from vexatious litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), holds that courts may use that authority when other sources do not govern the subject. The statutes and rules we have mentioned are limited in extent—to actions in the district court, to "appeals," and perhaps to acts by lawyers—but do not reflect a substantive decision that repetitious litigation by pro se litigants in original matters filed in the court of appeals ought not be penalized. Alexander is fined $500, and until he pays that sum in full to the clerk of this court, clerks of all courts within this circuit will return, unfiled, any papers he tenders in civil litigation, and this court will receive but not act on motions for leave to file successive collateral attacks. If Alexander persists in filing frivolous applications, the fine will go up.

The application is denied, a fine of $500 is assessed, the Bureau of Prisons will be notified of this fine, a *Mack* order is entered, and any further applications for leave to file successive collateral attacks will be deemed denied on the 30th day unless the court otherwise orders.