In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 09-1124, 09-1168

REX CARR,

*Plaintiff-Appellant/Cross-Appellee*,

*v.*

STEPHEN M. TILLERY *et al.*,

*Defendants-Appellees/Cross-Appellants.*

Appeals from the United States District Court
for the Southern District of Illinois.
No. 07-CV-314—**David R. Herndon**, *Chief Judge*.

ARGUED DECEMBER 4, 2009—DECIDED JANUARY 12, 2010

Before POSNER, RIPPLE, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. Rex Carr, a successful class action lawyer in southern Illinois, is locked in mortal combat with his former law partners, the defendants in a RICO case (with a supplemental state-law claim, 28 U.S.C. § 1367) that he brought in federal district court. The dispute is over the division of legal fees in cases

handled by the law firm (Carr Korein Tillery, LLC) before it broke up; Carr is seeking some $20 million in compensatory damages alone. The district court dismissed the entire case, supplemental claim and all, under Rule 12(b)(6) (failure to state a claim), on the ground that Carr's claims are precluded by judgments in previous suits by him against the same defendants. Since res judicata is an affirmative defense, the defendant should raise it and then move for judgment on the pleadings under Rule 12(c). *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 664 (7th Cir. 2007); *McCready v. eBay, Inc.*, 453 F.3d 882, 892 n. 2 (7th Cir. 2006). The judge thus jumped the gun in dismissing the case under Rule 12(b)(6). But the error is of no consequence. He had before him all he needed in order to be able to rule on the defense, and anyway the plaintiff does not complain about the error.

Carr appeals. The defendants cross-appeal from the denial of their motion for sanctions for what they contend are his abusive litigating tactics. This is Carr's eighth suit against the defendants complaining about the division of fees; a ninth is pending in Missouri; and in at least four other cases that were handled by the law firm before the break up he has filed liens in an attempt to get a bigger share of the fees than the defendants had allotted to him. One of these suits, as we'll see, led this court to sanction Carr for misconduct.

The partners had several agreements concerning allocation of fees; these continued in force when the firm ceased to engage in the practice of law in 2003, though it continued a twilight existence to administer the alloca-

tion of fees earned but not yet paid by clients in cases pending when the firm ceased practice. A further agreement was also adopted then. Disputes over the allocation of fees erupted the following year and led to a flurry of suits in an Illinois state court. The disputes were resolved—or so it seemed—by a "Memorandum of Understanding" drafted by Carr and agreed to in April 2004 by the other former partners. The Memorandum specified (in part by adoption of the terms in the previous agreements) how all fees—past, present, and future—would be allocated among the former partners. It provided that when fees came in to the partner who had handled a case, he would pay over the entire amount to the law firm (the shell) for determination of how much each of the other partners was entitled to. The Memorandum also required that the suits be dismissed.

One of the suits was a declaratory judgment action brought by the other partners (the defendants in this case) against Carr. He had filed a counterclaim; and in May 2004, before the suit was dismissed as required by the Memorandum, he amended the counterclaim to add a claim that he had been fraudulently induced to sign the Memorandum of Understanding. More than two years later, in September 2006, the Illinois court in which Carr's suits were pending rejected the counterclaim and entered final judgment, pursuant to the Memorandum, dismissing with prejudice all the pending suits. The judgment was affirmed by the Illinois Appellate Court in December 2007 and Carr did not seek review by the Supreme Court of Illinois.

The complaint in his present suit repeats many of the charges in the 2004 suits, including the charge that he was fraudulently induced to sign the Memorandum of Understanding and that the defendants had violated the previous fee-allocation agreements, which the Memorandum had superseded. All those charges are barred by the dismissal with prejudice of the 2004 suits. The fact that the present suit redescribes the wrongful acts alleged in the earlier ones as predicate acts in support of the RICO claim is irrelevant. You cannot maintain a suit, arising from the same transaction or events underlying a previous suit, simply by a change of legal theory. That is called "claim splitting," and is barred by the doctrine of res judicata. *Nowak v. St. Rita High School*, 757 N.E.2d 471, 478-79 (Ill. 2001); *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998); *Curtis v. Lofy,* 914 N.E.2d 248, 258-59 (Ill. App. 2009); *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 338-39 (7th Cir. 1995) (Illinois law).

As if this were not enough, those charges (and more, as we'll see) are also barred by Illinois's "one refiling," or, as it is sometimes called, "single refiling," rule. In March and April 2007, while the dismissal of Carr's counterclaim in the earlier litigation was pending on appeal, he filed four lawsuits against the defendants in Illinois state courts. He filed the present suit three weeks after the filing of the fourth state-law suit, and within days of doing so voluntarily dismissed all four suits; the dismissal orders state that the dismissals are without prejudice. Illinois law provides that a plaintiff who voluntarily dismisses a suit "may commence a new action within

one year or within the remaining period of limitation, whichever is greater." 735 ILCS 5/13-217. The Illinois courts interpret this to mean that a plaintiff who voluntarily dismisses a suit may commence *only one* new action. *Timberlake v. Illini Hospital*, 676 N.E.2d 634, 636-37 (Ill. 1997); *Flesner v. Youngs Development Co.*, 582 N.E.2d 720, 721 (Ill. 1991); *Gendek v. Jehangir*, 518 N.E.2d 1051, 1053 (Ill. 1988); *Schrager v. Grossman*, 752 N.E.2d 1, 4 (Ill. App. 2000); *D'Last Corp. v. Ugent*, 681 N.E.2d 12, 15-16 (Ill. App. 1997); *Ko v. Eljer Industries, Inc.*, 678 N.E.2d 641, 647-48 (Ill. App. 1997); *Eskridge v. Cook County*, 577 F.3d 806, 808 (7th Cir. 2009) (Illinois law). It is true that *Fanaro v. First National Bank*, 513 N.E.2d 1041 (Ill. App. 1987), held the contrary, but it was explicitly rejected by the Supreme Court of Illinois in the *Timberlake* case.

Carr concedes that the one-refiling rule is applicable to the refiling in a federal court of a suit originally filed in an Illinois state court, because it is a rule of preclusion, like res judicata; and a federal court is required to give "full faith and credit" to records of (including judgments in) state judicial proceedings. 28 U.S.C. § 1738; *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466-67 (1982); *Allen v. McCurry*, 449 U.S. 90, 96 (1980). So if Illinois courts would invoke the one-refiling rule to bar the plaintiff from bringing the present suit in an Illinois state court (as he could have done, because state courts have concurrent jurisdiction with federal courts to enforce RICO), we must do likewise. Cf. *McKnight v. Dean*, 270 F.3d 513, 518-19 (7th Cir. 2001).

There are two ways of thinking about the application of the rule to this case. One, which is much the less plausible,

requires treating the four 2007 suits, insofar as they repeated charges in the 2004 suits, as a first refiling, so that the present suit, which Carr acknowledges arises from the same facts as the state-court suits that he filed and promptly dismissed in 2007, is a second refiling. He argues that the Illinois rule applies only when the first refiled suit is dismissed *before* the second one is filed; otherwise the second refiled suit isn't really "new." That is not correct, as the Illinois Appellate Court held in *Schrager v. Grossman*, *supra*, 752 N.E.2d at 5, and as we noted in *Eskridge v. Cook County, supra*, 577 F.3d at 807-08. See also *Rockford Mutual Ins. Co. v. Blaase*, 615 N.E.2d 1333, 1335-36 (Ill. App. 1993). The new action is the action filed later; the date on which the previous action was dismissed is irrelevant. The RICO suit was a new action because it was filed after the state-court suits. Failing without excuse to make up his mind whether he wanted to be in state or federal court, Carr filed five lawsuits in place of a single suit that would have included all the claims in the five separate suits.

But if the four state-court suits filed in 2007 are treated as the first refiling of the 2004 litigation, the Illinois rule bars relitigation in this suit only of claims arising from acts prior to Carr's filing of the counterclaim in May 2004; for the basis on which the Illinois courts decide whether a suit is a refiling is whether, had its predecessor been dismissed with prejudice, it would be barred by principles of res judicata. *D'Last Corp. v. Ugent, supra*, 681 N.E.2d at 16. (The one-refiling rule is thus the extension of the doctrine of res judicata to a class of cases in which the decision deemed to be res judicata is a dismissal without prejudice.)

The complaint in this present case is not (quite) just a rehash of the 2004 litigation, for it also charges—as do the four state-court suits that the plaintiff filed in 2007—that even if the Memorandum of Understanding is valid and enforceable, as the Illinois state courts have held, the defendants have violated it by not giving the plaintiff the fees to which it entitles him.

The second way of applying the one-refiling rule to this case, and we think the right way in light of both the Illinois case law and the practicalities of the situation, is to treat the first of the four suits filed in 2007 as the first in a series of identical case filed, the second such suit as the first refiling, and the third and fourth suits—and, critically, the present suit—as further refilings, thus barred by the rule. Indeed, this is the only approach in which the one-refiling rule does any work. For if the first filing was the 2004 litigation, the first refiling the four 2007 state-court suits treated as one, and the third (and thus barred) refiling the present suit, the fact that the four 2007 state-court suits were *voluntarily* dismissed would have no significance; they are just the first refiling of a suit (the 2004 litigation) dismissed with prejudice in September 2006. The one-refiling rule adds nothing to res judicata when the judgment in the first case was with prejudice; indeed, it doesn't apply, because the rule is about using a voluntary dismissal to preclude relitigation of a claim, and the dismissal of Carr's counterclaim was involuntary. And we're about to see that a plaintiff is not allowed to maintain duplicative suits; that creates just the kind of confusion and imposes just the kind of judicial burdens that inform the policy behind the one-refiling rule.

Each of the four 2007 state-court suits presented a theory or ground of liability that was different from the theory or ground in the other three suits, or sought different relief. The four were a suit for an accounting, a suit seeking a declaratory judgment on the allocation of fees, a suit for breach of contract, and a suit charging a conspiracy. All four arose from the same events or transactions, including—and this was the only new claim, the only one not barred by res judicata—the alleged nonpayment of fees due after the Memorandum of Understanding was adopted and after Carr's counterclaim was filed a month later. His multiplication of suits all arising from the same dispute was classic claim splitting, which the doctrine of res judicata bars, *Rein v. David A. Noyes & Co.*, 665 N.E.2d 1199, 1206-07 (Ill. 1996); see also 735 ILCS 5/2-619, as we noted in connection with his recasting his state-law claims as a RICO claim.

Carr argues that despite cases like *Rein* and the other cases we cited (*Nowak*, *River Park*, etc.), his claim splitting is permitted by Illinois law. He cites *Kellerman v. MCI Telecommunications Corp.*, 493 N.E.2d 1045, 1053-54 (Ill. 1986). The issue was whether an Illinois court should have stayed a case before it because a suit between the same parties arising from the same facts was pending in a federal court. Because the claims were different, and there wasn't much evidentiary overlap, the court held that the denial of the stay was proper. This, rather than strict application of the bar against claim splitting, is a common approach when parallel proceedings are pending in different jurisdictions, especially when each suit was initiated by a different one of the adversaries. The parallel

cases can proceed, but the judgment in the first case in which a final judgment on the merits is entered will be res judicata in the other suit if the other requirements for res judicata (same transaction or occurrence, same parties or their privies, etc.) are satisfied. *Pfaff v. Chrysler Corp.*, 610 N.E.2d 51, 73-74 (Ill. 1992); *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008) (Illinois law). Allowing both suits to proceed until one goes to judgment may be more economical than staying or dismissing one, which might require the parties to port issues or evidence from that case to the other case. *A. E. Staley Mfg. Co. v. Swift & Co.*, 419 N.E.2d 23, 27 (Ill. 1980); *Combined Ins. Co. v. Certain Underwriters at Lloyd's London*, 826 N.E.2d 1089, 1097 (Ill. App. 2005); compare *Skipper Marine Electronics, Inc. v. Cybernet Marine Products*, 558 N.E.2d 324, 327 (Ill. App. 1990).

This case might seem similar because three of the four 2007 cases were filed in the Illinois trial court of one county and one in the trial court of another Illinois county. But are different counties of the same state (and neighboring counties—Madison County and St. Clair County, both part of the St. Louis metropolitan area) different "jurisdictions" for purposes of deciding whether the plaintiff has split his claim between the two courts? The answer is "no." *A. E. Staley Mfg. Co. v. Swift & Co., supra*, 419 N.E.2d at 28; *Tumminaro v. Tumminaro*, 556 N.E.2d 293, 297 (Ill. App. 1990). And even if the courts in the different Illinois counties were considered different jurisdictions, this would leave us with three of the four state-court suits filed by Carr in 2007 in one jurisdiction. The second of those suits was a first refiling, so the third case—and this case,

the fourth—are barred by the one-refiling rule. The fact that the fourth case was filed before the previous ones were dismissed is, as we said earlier, irrelevant.

So the district court was right to dismiss the entire case after all, though on the basis of the one-refiling rule rather than res judicata, which as we explained would not bar a claim that the defendants had violated the Memorandum of Understanding.

The defendants also defend the dismissal of the present suit on the alternative ground that the RICO claim has no merit. And they are right—so right that it creates doubt whether the federal courts have subject-matter jurisdiction of this lawsuit; if not, the entire case must be dismissed without prejudice. This would not permit the plaintiff to refile the RICO claim; a jurisdictional ruling on an issue that has been fully and fairly adjudicated is barred from subsequent challenge by the doctrine of collateral estoppel. E.g., *Hill v. Potter*, 352 F.3d 1142, 1146-47 (7th Cir. 2003); *Okoro v. Bohman*, 164 F.3d 1059, 1062-63 (7th Cir. 1999); *Coors Brewing Co. v. Méndez-Torres*, 562 F.3d 3, 8-9 (1st Cir. 2009); *Bromwell v. Michigan Mutual Ins. Co.*, 115 F.3d 208, 212-13 (3d Cir. 1997); *Deutsch v. Flannery*, 823 F.2d 1361, 1364 (9th Cir. 1987). This illustrates the pertinent point that a dismissal can be without prejudice yet have preclusive effect; another example, of course, is the one-refiling rule.

But let's not forget the supplemental state-law claim; as the parties are not of diverse jurisdiction, there is no basis on which that claim can be retained in the district court if there is no jurisdiction over the federal claim. Even

so, if Carr tried to refile the supplemental claim in state court he would be barred by the one-refiling rule under any view of the application of that rule to this case. He filed the claim first in one of the four state-court suits that were dismissed; at best (for him) the refiling of the claim in this suit (insofar as the claim is based just on the alleged violations of the Memorandum of Understanding, the only claim not barred by res judicata) is his first refiling; Illinois law does not permit a second one.

So probably it makes no practical difference whether the dismissal of the RICO claim should be based on lack of jurisdiction or on lack of merit. But we do need to decide which it should be, as a simple affirmance would be error if the district court lacked jurisdiction.

A suit that is utterly frivolous does not engage the jurisdiction of the federal courts. *Hagans v. Lavine*, 415 U.S. 528, 536-38 (1974); *Johnson v. Orr*, 551 F.3d 564, 570-71 (7th Cir. 2008); *Jogi v. Voges*, 480 F.3d 822, 825-26 (7th Cir. 2007). What that means as a practical matter is that if it is clear beyond any reasonable doubt that a case doesn't belong in federal court, the parties cannot by agreeing to litigate it there authorize the federal courts to decide it. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *EEOC v. Chicago Club*, 86 F.3d 1423, 1428 (7th Cir. 1996). We once gave the example of a hypothetical dispute over bananas described by the parties as "securities" so that they could litigate their dispute in the federal courts under federal securities law. *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 277 (7th Cir. 1988). Congress would not have

wanted the federal courts to waste their time with such a case, and the courts therefore have an independent duty to refuse to entertain it.

The presumption, however, is that the dismissal of even a very weak case should be on the merits rather than because it was too weak even to engage federal jurisdiction. *Travelers Casualty & Surety Co. of America, Inc. v. Northwestern Mutual Life Ins. Co.*, 480 F.3d 499, 501 (7th Cir. 2007); *Johnson v. Wattenbarger*, 361 F.3d 991, 993-94 (7th Cir. 2004); *Williamson v. Tucker,* 645 F.2d 404, 415-16 (5th Cir. 1991). (Hence our use of the term "*utterly* frivolous.") Otherwise courts would spend too much time distinguishing degrees of weakness. And there is a certain perversity in a jurisdictional dismissal; it permits the plaintiff to refile his case, albeit (as we noted) not on the ground on which the dismissal was based.

The RICO claim in this case is weak, indeed feeble. The complaint contains fraud allegations that would create a prima facie RICO case, but they are barred by res judicata because they relate to conduct that preceded the alleged violations of the Memorandum of Understanding and arose from the same events that gave rise to Carr's four 2007 state-court suits. What is not barred by res judicata (though barred by the one-refiling rule) are the allegations of violations of the Memorandum. But those allegations amount merely to a breach of contract claim, which cannot be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent, indeed criminal. RICO is not a proper vehicle for levering a breach of contract suit between citizens of the same state

into federal court, and under a statute that entitles a successful plaintiff to treble damages and attorneys' fees. *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 472-73 (7th Cir. 2007); *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 522 (7th Cir. 1995); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025-26 (7th Cir. 1992) ("civil RICO plaintiffs persist in trying to fit a square peg in[to] a round hole by squeezing garden-variety business disputes into civil RICO actions . . . . RICO has not federalized every state common-law cause of action available to remedy business deals gone sour"); *Western Associates LP v. Market Square Associates*, 235 F.3d 629, 636-37 (D.C. Cir. 2001).

For the most part the complaint simply renames breach of contract fraud or crime in an effort to satisfy the require-ment of establishing "predicate acts" required for a RICO claim. The defendants did not pay Carr the fees to which he contends he was entitled by the Memorandum of Understanding: the complaint calls this extortion, finan-cial exploitation of an elderly person, theft in interstate commerce, mail fraud, wire fraud, and so on almost ad infinitum. If such renaming satisfies civil RICO, we shall see a wholesale migration of breach of contract suits into the federal courts, given the procedural advantages of so proceeding that we noted earlier.

One of the "predicate acts" allegations that seems especially desperate is that the defendants had committed fraud by misrepresenting to their bookkeeper what Carr was owed, in consequence of which she mailed him a smaller check than he claims to have been entitled to. The

agreement terminating the law firm's practice provided that the law firm (in its post-break-up shell form) would pay Carr his share of fees as they came in. The complaint just says that the defendants told the firm's bookkeeper what to pay Carr and didn't tell her that it was less than the Memorandum entitled him to. This omission could not have harmed him any more than if the defendants had cut and mailed the check themselves. See *Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1011 (7th Cir. 2004); *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006); *Grantham & Mann, Inc. v. American Safety Products, Inc.*, 831 F.2d 596, 606 (6th Cir. 1987).

With this observation, the other allegations on which the RICO claim is based dissolve. Remember that the only RICO claim not barred by res judicata is a claim that the defendants engaged in a pattern of racketeering activity (the frauds, extortion, etc.) to avoid honoring their obligations to Carr under the Memorandum of Understanding. It has never been explained how any of those acts could have prevented him from collecting the fees due him under the Memorandum. He had only to compare his receipts with the text of the Memorandum, and with the spreadsheets that he received showing the amount of fees that the defendants had received, to realize that he had a claim; and he does not allege that the amount of the fees that the defendants had received was misrepresented to him.

He might argue that the defendants' misconduct had made his efforts to obtain damages for breach of contract more costly. But as far as we can tell from the prolix

complaint, that isn't the nature of his damages claim: he wants damages for breach of the Memorandum of Understanding.

The RICO claim is a complete nonstarter. But this is true mainly because the only plausible allegations of predicate acts are barred by res judicata and all the allegations are barred by the one-refiling rule. Res judicata and its cousin the one-refiling rule are not, in general, appropriate grounds on which to base a conclusion that a suit is so frivolous as not to engage the jurisdiction of the federal courts. Both are affirmative defenses and when clearly meritorious form the basis of a motion on the pleadings under Rule 12(c), which is a motion for dismissal on the merits. Of course if a plaintiff keeps filing the same suit over and over again, a point will be reached at which his litigating is so frivolous that his suits will be dismissed on jurisdictional grounds. Carr has not quite reached that point in this case. Thus the suit was properly dismissed with prejudice.

Turning now to the cross-appeal, we think the defendants' motion for sanctions should not have been denied. The plaintiffs' lawyers may secretly agree, for they make no attempt to counter the arguments for sanctions made in the defendants' brief even though the district judge denied the motion without explanation. They follow suit by merely asking us, without explanation, to affirm the denial.

The motion complained that Carr is harassing the defendants with repetitive litigation, including a suit—this suit—that borders on the frivolous, even though he is

an immensely successful lawyer represented on appeal by one of the nation's premier law firms, Kirkland and Ellis, as well as by his son Bruce Carr of the Rex Carr Law Firm, which the plaintiff formed after the break-up of his old firm.

Section 1927 of the Judicial Code, on which the motion was based, provides that a lawyer "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The statute is applicable not only to lawyers who represent clients but also to a lawyer who represents himself, as Carr did in the district court. *Sassower v. Field*, 973 F.2d 75, 80 (2d Cir. 1992). (Whether a pro se litigant who is not a lawyer can be sanctioned under section 1927 is an open question in this circuit. *Alexander v. United States*, 121 F.3d 312, 315-16 (7th Cir. 1997).)

But we have held that section 1927 is inapplicable to "misconduct that occurs before the case appears on the federal court's docket," or in other words to "improper conduct in the run up to litigation." *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006); see also *In re Case*, 937 F.2d 1014, 1023 (5th Cir. 1991). This interpretation does not leave victims of unreasonable and vexatious litigation remediless, and should not: a litigant can't be allowed to file repeated meritless suits with impunity just so long as he does not protract any one of them unreasonably. A court has inherent power, which is to say a common law power, to punish by an award of reasonable attorneys' fees or

other monetary sanction, or to prevent for the future by an injunction, misconduct by lawyers appearing before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *Mach v. Will County Sheriff*, 580 F.3d 495, 502 (7th Cir. 2009); *Alexander v. United States*, *supra*, 121 F.3d at 316. The limitations of section 1927 do not apply to the exercise of that power.

The defendants didn't invoke this common law power in the district court. But neither has the plaintiff argued in this court for the limited interpretation of section 1927 adopted in the *Bender* case. The defendants have treated the issue of sanctions as turning not on the statute's scope but on the egregiousness of the plaintiff's conduct, which they set out at length in their briefs and to which his lawyers have made no reply. We see no obstacle therefore to invoking the common law ground for sanctions for misconduct in litigation, especially since the common law principle, like its statutory counterpart, is as much concerned with protecting the courts from being overwhelmed by baseless litigation as with protecting litigants from harassment.

Although the suit is not frivolous, or at least not utterly so, it is so lacking in merit (most clearly because of res judicata and the one-refiling rule) that its pursuit by the plaintiff indicates a motive to harass. The indication is made conclusive by the vitriolic tone of the complaint, which was drafted by Carr himself, and by the character of his lawyers' briefs and oral argument in this court. We note the failure of his lawyers in this court to cite the *Schrager* case in their opening brief, the disingenuous

efforts at distinguishing *Schrager* and *Eskridge* in the reply brief, the false statement in the opening brief that "Carr does not seek to relitigate issues from the 2004 litigation," and the improper attempt to raise issues in the reply brief that had not been mentioned in the opening brief. The failure to even attempt to rebut the cross-appeal on sanctions is also telling.

Two years ago we sanctioned Carr under Rule 38 for filing a frivolous appeal—in a suit in which he was not a party but into which he had tried to inject himself by filing a lien on fees that the district court had ruled were due to his former partners. The district court correctly dismissed the filing for lack of subject-matter jurisdiction and this court dismissed Carr's appeal as improper, noting his "refus[al] to accept adverse judicial decisions." *Cooper v. IBM Personal Pension Plan*, 240 Fed. App'x 133, 135 (7th Cir. 2007) (per curiam). The complaint in the present case asserts wildly that we sanctioned Carr because we had been taken in by the defendants' lies.

The filing of four lawsuits in the Illinois state courts and their abandonment upon the filing of a fifth lawsuit that sought to circumvent the absence of diversity jurisdiction by recharacterizing a breach of contract action (the only thing not barred by res judicata—yet even it was barred by the one-refiling rule) as a violation of RICO was an abuse of the patience of the courts.

This litigation is groundless. The plaintiff is out of control and his lawyers are neglecting their duties as officers of the state and federal courts by failing to rein him in. The district court is directed to assess a proper

monetary sanction. (The defendants have not asked us to impose sanctions for misconduct in the proceedings in this court.)

The district court should also consider whether to enjoin Carr from conducting further litigation arising from actions by the defendants of which he has complained in his voluminous filings to date. Such injunctions, which complement the award of monetary sanctions for vexatious litigation, are standard remedies for misconduct in litigation. *In re Anderson*, 511 U.S. 364, 365-66 (1994) (per curiam); *In re City of Chicago*, 500 F.3d 582, 583 (7th Cir. 2007); *Montgomery v. Davis*, 362 F.3d 956 (7th Cir. 2004) (per curiam); *Alexander v. United States*, *supra*, 121 F.3d at 315; *Andrews v. Heaton*, 483 F.3d 1070, 1077-78 (10th Cir. 2007); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1298-99 (11th Cir. 2002). The unlikelihood, in view of the history of Carr's litigation with the defendants, that he will accept defeat gracefully suggests that the remedy may be needed in this case.

Such injunctions permit the person enjoined to ask the court's permission to lift the injunction for good cause. E.g., *In re Davis*, 878 F.2d 211, 212-13 (7th Cir. 1989) (per curiam). We mention this because some of the fees to which Carr may be entitled under the Memorandum of Understanding have not yet been paid. Should the defendants refuse to pay him his share on a ground not placed in issue in this case or any of the previous litigation between Carr and the defendants, he will be entitled to bring a new suit.

The judgment in favor of the defendants is affirmed, but the order denying their motion for sanctions is vacated and the case is remanded for reconsideration of that motion.