Julian C. GODWIN, Plaintiff,

v.

M. Dale MARSH and Joe C. Cassady,
Jr., Defendants.

No. CIV.A. 01–T–23–S.

United States District Court,
M.D. Alabama,
Southern Division.

Aug. 28, 2002.

Julian C. Godwin, Montgomery, AL, Pro se.

M. Chad Tindol, Cassady, Fuller & Marsh, Enterprise, AL, for M. Dale Marsh, Joe C. Cassady, Jr., defendants.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Julian C. Godwin brought this case against defendants M. Dale Marsh and Joe C. Cassady, Jr., two attorneys, alleging a violation of 42 U.S.C. § 1985. In his complaint, Godwin alleged that his constitutional rights were violated by Marsh and Cassady, who "conspired to intimidate, threaten, and obstruct" him from obtaining a fair hearing in state court. Complaint, filed January 5, 2001, at 1. In response to an order of this court to clarify the basis for jurisdiction, Godwin further alleged that Marsh and Cassady conspired to tamper with his due-process rights and his right to equal treatment under the law. Finding that Godwin failed to properly allege a violation of § 1985, this court subsequently granted Marsh and Cassady's motion to dismiss. The Eleventh Circuit recently affirmed this court's judgment.

This matter is now before the court on Marsh and Cassady's motion for sanctions. For the reasons stated below, the court will impose sanctions on Godwin.

## I.

This is the third in a series of at least five cases Godwin has filed in the Middle District of Alabama, all of which arise from a dispute over the probate of a will in state court. The underlying facts of this dispute were recited by Magistrate Judge Charles M. Coody in his recommendation in one of these cases as follows:

"Godwin and his sister, Gwen Warren ('Warren'), began playing an active role in the personal and financial affairs of their sister, Doris Nichols ('Doris'), in February 1993 after the death of Doris' husband, Mack Nichols ('Mack'). In the months following Mack's death, Doris' health began to deteriorate. Warren was concerned about Doris' ability to take care of her basic needs and consequently hired several members of Mack's family to provide Doris with twenty-four hour nursing care. Godwin and Warren were also concerned about Doris' ability to manage the sizable estate acquired after her husband's death which consisted of 77 acres of real property and approximately $269,000 in liquid assets. On April 23, 1993, Doris gave Godwin a general power of attorney, authorizing him to transact business on her behalf.

"Sometime after receiving the power of attorney, Godwin began to suspect that Mack's relatives were attempting to divest Doris of her property and assets. Loftin Martin ('Martin') and Phyllis Ora Thompson Nichols Casey ('Casey'), Mack's nephew and daughter-in-law,

told Doris that Mack did not intend to leave his entire estate to her and insinuated that they would take legal action to insure an equitable division of the estate. Faced with these threats, Godwin and Warren became increasingly concerned about the safety of Doris' assets. In June 1993, Godwin transferred $250,000 from Doris' bank account, depositing $125,000 in his personal bank account and $125,000 in Warren's personal bank account. Shortly after this transaction, Mildred Page ('Page') and Jane Owen ('Owen'), the caretakers whom Warren had hired, began telling Doris that they were concerned about Godwin and Warren's management of her financial affairs. Ultimately, Doris began to suspect that Godwin and Warren were stealing from her.

"On December 2, 1993 Doris revoked Godwin's power of attorney and gave Martin a durable power of attorney. Eight days later on December 10, 1993, Doris revoked a will executed on September 23, 1991 which named Warren as a residuary legatee and executrix of her estate. In her new will, Doris named Martin as the executor and removed Warren as her sole beneficiary. A month later on January 10, 1994, Doris executed a quitclaim deed to Casey for the 77 acres of real property which she had inherited from Mack."

*Godwin v. Marsh,* Civil Action No. 01–A–876–N (M.D.Ala. Oct. 4, 2001).

The previous cases are *Godwin v. Marsh,* Civil Action No. 96–D–609–5 (M.D.Ala.), and *Godwin v. Marsh,* Civil Action No. 99–A–1490–S (M.D.Ala.). The first case was dismissed on September 11, 1996, and that dismissal was affirmed by the Eleventh Circuit on August 11, 1997 (No. 96–007). The second case was remanded to state court, and the appeal of the remand was dismissed (No. 00–10064–F). The fourth case, *Godwin v. Moore,* Civil Action No. 01–A–876–N (M.D. Ala.),

was dismissed on December 11, 2001, and appealed to the Eleventh Circuit where it is still pending (No. 02–10192–BB). The fifth case, *Martin v. Godwin,* Civil Action No. 01–A–1019–S (M.D.Ala.), in which Godwin attempted to remove the underlying state-court will contest, was remanded to state court on August 27, 2001, and the appeal of the remand is also pending in the Eleventh Circuit (No. 01–15525–A). In addition, Godwin has filed at least nine other state cases related to the probate dispute.

## II.

Marsh and Cassady have requested the court to "enter an appropriate award of costs and fees," and they have requested that the court enjoin Godwin "from filing further suits without posting a contempt of court bond in the amount of $2500, and submitting a sworn affidavit that he will abide by tenets of the federal rules." Supplemental brief in support of sanctions, filed August 1, 2001, at 1.

Marsh and Cassady have not asked for sanctions under Rule 11 of the Federal Rules of Civil Procedure; instead, they ask for sanctions under the court's inherent powers and pursuant to 28 U.S.C. § 1927. The court will first consider whether sanctions are appropriate against a *pro se* party under § 1927, and will then consider sanctions under the court's inherent powers.

### A. § 1927

Section 1927 provides that "any attorney or other person admitted to conduct cases in any court … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The first question this court must

address is whether § 1927 applies to *pro se* litigants.

The Eleventh Circuit has determined that three elements underpin § 1927 sanctions:

"First, the attorney must engage in 'unreasonable and vexatious' conduct. Second, that 'unreasonable and vexatious' conduct must be conduct that multiplies the proceedings. Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.*, the sanction may not exceed the 'costs, expenses, and attorney's fees reasonably incurred because of such conduct.'"

*Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997) (quoting 28 U.S.C. § 1927).

■ In the words of one court of appeals, "suits are easy to file and hard to defend. The best way to control unjustified tactics in litigation is to ensure that those who create costs also bear them. When an attorney recklessly creates needless costs the other side is entitled to relief." *In re TCI Ltd.,* 769 F.2d 441, 446 (7th Cir.1985). Section 1927 allows district courts to "assess attorneys fees against litigants, counsel and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991), *cert. denied,* 502 U.S. 1048, 112 S.Ct. 913, 116 L.Ed.2d 813 (1992).

■ Section 1927 fees may be awarded in cases lacking in credibility from the outset, such as when an attorney fails to investigate adequately or properly the support the allegations contained in the complaint. *Sullivan v. School Bd. of Pinellas County,* 773 F.2d 1182, 1189 (11th Cir. 1985). For example, in *Beard v. Annis,* 730 F.2d 741 (11th Cir.1984), an employee brought a frivolous suit against his employer alleging race discrimination. *Id.* at 743. In awarding defendants fees and

costs incurred for the duration of the suit, the district court observed that "the allegations were shown to be irresponsible, untruthful, outrageous, scandalous, and slanderous at times, evidencing a callous regard for the truth or the rights of the parties." *Id.* at 744. Upholding the fee award, the Eleventh Circuit found the lawsuit "groundless, baseless, and frivolous at the time it was filed." *Id.* at 745.

■ Attorneys are not only responsible for investigating the claims of a lawsuit prior to filing, but have a continuing obligation throughout the pendency of the action to insure the lawsuit continues to have merit. *Avirgan,* 932 F.2d at 1582 ("when it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest") (quoting *Collins v. Walden,* 834 F.2d 961, 965 (11th Cir. 1987)). If evidence becomes known that is contrary to the asserted claim, or if it becomes clear that the claim is baseless, attorneys have an obligation to seek voluntary dismissal. *Collins,* 834 F.2d at 965. When an attorney is on notice that a claim is without merit but continues to prosecute nonetheless, the attorney acts in bad faith and risks sanctions.

For the court's purposes here, the key word in all the above cases is *attorney;* those admitted to practice are undeniably covered by § 1927. But what about *pro se litigants* such as Godwin? The courts of appeals are split on § 1927's application to *pro se* litigants. The Second Circuit Court of Appeals has held that attorney's fees may not be awarded against non-lawyers under 28 U.S.C. § 1927. In *Sassower v. Field,* 973 F.2d 75, 80 (2nd Cir.1992) (emphasis added), *cert. denied,* 507 U.S. 1043, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993), the court stated that, because § 1927 applies to any "attorney or other person *admitted to conduct cases*" in a federal court, it should not apply to *pro se* litigants, who

may practice before the court without being "admitted." The court reasoned:

> "Section 1927 applies to any 'attorney or other person admitted to conduct cases' in a federal court.... [T]the word 'admitted' in this context suggests application to those who, like attorneys, gain approval to appear in a lawyerlike capacity." Moreover, parties generally have a right to appear *pro se. See* 28 U.S.C. § 1654 (1988); *O'Reilly v. New York Times Co.,* 692 F.2d 863, 867 (2d Cir.1982). Though the Sassowers' former attorney needed and obtained permission to be relieved, the granting of his motion left the plaintiffs free to proceed *pro se,* without further order of the Court.
>
> "Moreover, it is unlikely that Congress intended the phrase 'other person' to include a person lacking lawyer-like credentials. The prior version of the statute read 'any attorney, proctor, or other person admitted.' *See Motion Picture Patents Co. v. Steiner,* 201 F. 63, 64 (2d Cir.1912). This phrasing also suggests that 'other person' covers only those admitted to act in a lawyerlike capacity."

*Id.* Similarly, the Fifth Circuit Court of Appeals has held that § 1927 applies not to parties but rather to the parties' attorneys, and remanded the case for assessment of fees and expenses against "counsel pursuant to § 1927." *Meadowbriar Home for Children, Inc. v. G.B. Gunn,* 81 F.3d 521, 535 (5th Cir.1996).

The Ninth Circuit, in contrast, has held that § 1927 is applicable to *pro se* plaintiffs. *Wages v. I.R.S.,* 915 F.2d 1230 (9th Cir.1990), *cert. denied,* 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1071 (1991); *see also Brown v. Adidas Int.,* 938 F.Supp. 628 (S.D.Cal.1996). However, neither *Wages* nor *Brown* gives any reasoning for its decision that § 1927 applies to *pro se* litigants. *See also Alexander v. U.S.,* 121 F.3d 312, 316 (7th Cir.1997) (noting circuit split on whether § 1927 applies to *pro se* litigants and deciding to impose sanctions under court's inherent powers); 61a Am Jur.2d. Pleading § 658 (2002) (noting apparent circuit split on whether § 1927 applies to *pro se* litigants).

While the Eleventh Circuit has broadly stated that § 1927 allows district courts to "assess attorney's fees against litigants, counsel, and law firms who willfully abuse the judicial process by conduct tantamount to bad faith," *Avirgan,* 932 F.2d at 1582, it has not explicitly addressed the issue of § 1927's applicability to *pro se* litigants.

■■■ The court finds the reasoning of the *Sassower* court convincing, and concludes that § 1927 does not apply to *pro se* litigants. To this court, it is dispositive that, by its plain language, § 1927 applies to those *admitted* to practice law in the court and not to others, such as parties. "The starting point for all statutory interpretation is the language of the statute itself." *United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir.1999). Courts should "assume that Congress used the words in a statute as they are commonly and ordinarily understood." *Id.* A court should "only look beyond the plain language of a statute at extrinsic materials to determine the congressional intent if: (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent." *Id.* None of these exceptions applies here.

Because the court finds that 28 U.S.C. § 1927 does not apply to *pro se* litigants, it will not sanction *pro se* litigant Godwin under § 1927.

### B. Sanctions under the Court's Inherent Powers

■■■ In *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court affirmed an award of attorney's fees against a defen-

dant under the court's inherent powers. The Court warned, however, that "because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44, 111 S.Ct. at 2132. The "inherent power extends to a full range of ligation abuses," *id.* at 46, 111 S.Ct. at 2134, and a federal court is not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Id.* at 50, 111 S.Ct. at 2135–36. The Eleventh Circuit instructed in *Barnes v. Dalton* that the "key to unlocking a court's inherent power is a finding of bad faith." 158 F.3d 1212, 1214 (11th Cir.1998).

There is sufficient evidence here of bad faith to support sanctions. First, Godwin's complaint in this case was without merit; as this court wrote in dismissing this lawsuit, the "allegations contained in Godwin's complaint fall far short of establishing a violation of § 1985." Memorandum Opinion, entered March 6, 2001, at 2. On appeal, the Eleventh Circuit held that, "Quite simply, Godwin fails to plead the existence of a conspiracy, any acts in furtherance of the alleged conspiracy, any class-based discriminatory motive, or any personal injury resulting from the alleged conspiracy." 33 Fed.Appx. 992, 2002 WL 441302 (11th Cir. 2002).

Moreover, the pleadings Godwin has filed in this case demonstrate that, rather than stating a legitimate constitutional violation, he is attempting to re-litigate, under various guises, a state probate matter. Godwin has filed at least five cases in federal court, all without merit, and each has been appealed to the Eleventh Circuit, with three, including the present case, already affirmed. It is also evident that Godwin has acted maliciously. For example, when Marsh and Cassady submitted their motion to dismiss, Godwin responded by seeking to add the attorney representing them.

As such, Godwin is abusing the federal court system, needlessly adding to the court's docket and harassing opposing attorneys as well as others.

#### i. Attorney's Fees

Having found that sanctions should be imposed pursuant to its inherent powers, the court must "fashion an appropriate sanction," *Chambers,* 501 U.S. at 44–45, 111 S.Ct. at 2133, and one of the sanctions the court may impose is attorney's fees. *Id.* The court therefore finds it appropriate to award reasonable attorney's fees to Marsh and Cassady. Marsh and Cassady will be given until September 20, 2002, to submit to the court an itemized request for attorney's fees, at which time Godwin will be given an opportunity to object, in writing, to the reasonableness of fees submitted.

#### ii. Injunction

 Appellate courts have also upheld orders which limit a *pro se* plaintiff's access to the courts. *Washington v. Alaimo,* 934 F.Supp. 1395, 1399 (S.D.Ga.1996) (listing cases). Limits on access, however, must not be so severe as to completely foreclose access to the courts. *Id.* at 1399. The *Alaimo* court enjoined the plaintiff to post a $1500 contempt bond, in addition to the ordinary filing fee, when filing a complaint with the court, and further enjoined the plaintiff to file, along with a complaint, a signed affidavit swearing the plaintiff had read Federal Rule of Civil Procedure 11 and that he would abide by this rule. *Id.* at 1400. To further protect the court's resources, the court ordered that, even if the plaintiff met these requirements, before the clerk of the court docketed the complaint, the complaint was to be vetted by a district court judge or magistrate judge who would conduct a frivolity review under 28 U.S.C. § 1915. *Id.*

The court declines at this time to impose such restrictions on Godwin's access to this court. The court believes that it should

instead first give a firm warning to him. Therefore, Godwin is informed that if he continues with such harassing, vexatious, and meritless litigation, the court will impose these or similar restrictions on him in the future.

### III.

For the reasons stated above, it ORDERED that the motion for sanctions, filed by defendants M. Dale Marsh and Joe C. Cassady, Jr., on February 12, 2001 (Doc. no. 8), is granted to the extent they are given until September 20, 2002, to submit an itemization of the fees they incurred in the litigation in this case in this district court.