Laponzo M. DALLAS, Petitioner,

v.

Ian GAMBLE, Warden, (HSU) Staff, and Bill McCreedy, Social Worker, Respondents.

Laponzo M. Dallas, Petitioner,

v.

Ryan Bartow, Warden, HSU Staff John Does and U.W. Hospital John Does, Respondents.

Nos. 00–C–87–C, 04–C–374–C.

United States District Court, W.D. Wisconsin.

Aug. 14, 2006.

Laponzo M. Dallas, Madison, WI, Pro se.

Charles D. Hoornstra, Assistant Attorney General, Madison, WI, for Respondents.

## ORDER

CRABB, District Judge.

Prompted by recent motions that have been filed in these closed cases, three questions are before the court: 1) whether an order under *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir.1995), prohibits a clerk of court from filing a restricted litigant's request for court intervention from interference with his ability to pay sanctions imposed in the *Mack* order; 2) whether a *Mack* order prohibits a clerk of court from filing a restricted litigant's civil complaint alleging imminent danger of serious physical injury; and 3) whether petitioner Dallas is entitled to a court order directing prison officials to take funds from his prison trust fund account for the monetary sanctions he is required to pay under the *Mack* order imposed against him.

■ Petitioner Laponzo Dallas is a prisoner at the Wisconsin Resource Center in Winnebago, Wisconsin. He struck out long ago under 28 U.S.C. § 1915(g). Pursuant to § 1915(g), once a third strike is recorded against an inmate, he may not seek pauper status in any future civil action or appeal "unless [he] is under imminent danger of serious physical injury." If he persists in filing appeals or new complaints that do not qualify for the imminent danger exception to § 1915(g) and those filings are not accompanied by the filing fee, he not only owes the fee for filing each new case or appeal, but he may be subject to an order of the kind specified in *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir.1995). Under

*Mack,* the clerks of every court in the circuit must return to a petitioner, unfiled, any papers the petitioner sends to the court in any civil litigation other than a collateral attack on a criminal conviction until he or she satisfies the sanction or penalty specified in the order.

Petitioner Dallas added restricted filer status under *Mack* to his § 1915(g) status on March 6, 2001, after he filed an appeal from this court's denial of his request for leave to proceed in *forma pauperis* in *Dallas v. Gamble,* 00–C–87–C. In the complaint in case no. 00–C–87–C, Dallas had claimed to be experiencing stomach upsets and indigestion for several months because he was being poisoned. In rambling statements, he alleged that respondent prison officials were conspiring to murder him and that prison medical staff were not responding to his symptoms of poisoning. Before screening petitioner's complaint, I reviewed his filing history and discovered that in 1997, he had filed three legally meritless complaints in the District Court for the Eastern District of Wisconsin. However, before dismissing his complaint pursuant to § 1915(g), I considered whether his vague and improbable assertions of physical harm were adequate to allow him to proceed under the imminent danger exception and concluded they were not. The court of appeals agreed. In an unpublished order dated March 6, 2001, the court confirmed this court's ruling that petitioner had struck out. In addition, the court of appeals upheld this court's assessment that petitioner's claim of imminent danger was insufficient to warrant an exception to § 1915(g). However, rather than ruling that petitioner could proceed with his claim only if he prepaid the filing fee given his newly declared three-strike status, the court proceeded straight to imposition of a *Mack* order. The court explained its disposition of the matter:

The district judge gave Dallas good advice, to which he should have listened.

Now he owes the United States $255 ($150 for filing suit in the district court and another $105 for filing the notice of appeal). Until he pays this amount in full, the clerks of this court and every district court in the circuit will return, unfiled, any papers Dallas tenders in any civil litigation (other than a collateral attack on a criminal conviction).

*Dallas v. Gamble,* 2 Fed.Appx. 563, 2001 WL 238071 (7th Cir.2001) (citations omitted) Subsequently, petitioner paid $105 of the $255 debt he had incurred in case no. 00–C–87–C. He still owes $150 in that case.

Two years later, on May 2, 2002, petitioner submitted a proposed civil complaint to this court. It was assigned case no. 02–C–193–C. Subsequently, the complaint was returned to petitioner in compliance with the *Mack* order. Petitioner attempted to file an appeal from the action taken by the clerk. On May 23, 2002, the appeal was returned to petitioner.

Two years later, on June 16, 2004, petitioner filed case no. 04–C–374–C without first paying a filing fee. Although petitioner remained subject to the *Mack* order imposed upon him in case no. 00–C–87–C, the clerk did not return Dallas's pleading to him. It is not clear whether the case was opened because the clerk inadvertently overlooked petitioner's restricted filer status or because petitioner's complaint appeared to contain allegations that he was in imminent danger of a serious physical injury. In any event, the pleading was assigned a case number and forwarded to chambers for screening. Upon close review of petitioner's complaint, however, this court determined that petitioner was re-alleging his claim that respondents were putting something in his food that was causing him stomach distress. As I had done in case no. 00–C–87–C, I ruled that petitioner's allegations were not credible

and therefore were insufficient to require application of the exception to § 1915(g). When petitioner attempted to appeal that ruling without prepaying the filing fee, I implemented the mechanism for curtailing petitioner's legally frivolous filings set out in the court of appeals' *Mack* order and advised petitioner in a memorandum dated June 29, 2004, that I was returning his appeal to him. In the memorandum I noted in passing that because petitioner was subject to a *Mack* order at the time he filed his complaint in case no. 04–C–374, the complaint probably should not have been filed. (This comment may have been unwarranted, as I will explain later.) In any event, I ordered that petitioner pay in full, no later than July 9, 2004, the $150 fee for filing his complaint in case no. 04–C–374–C. I ordered as well that if, by July 9, 2004, petitioner failed to pay the filing fee, the clerk was to notify the warden of the Wisconsin Resource Center of petitioner's debt "so that he can begin collecting it in installments pursuant to 28 U.S.C. § 1915(b)(2) when petitioner has the means to make such payments."

In the recent past, petitioner has attempted to file three additional new actions. In each pleading, he alleged that he is suffering from a stomach ailment caused by state officials who are plotting to murder him. In each instance, the clerk forwarded the proposed pleadings to chambers without opening a case file so that I could review petitioner's complaints for the existence of credible allegations of imminent danger (the exception to § 1915(g)) or a claim sounding in habeas corpus (the stated exception to *Mack*). In each instance I have concluded that no habeas corpus claim existed and that petitioner's allegations of imminent danger were insufficient to warrant an exception to § 1915(g). For those reasons, I have directed the clerk to return petitioner's pleadings to him as required by the *Mack* order.

Now petitioner has submitted a motion in each of the above-captioned cases, asking for an order directing prison officials to allow him to pay the $150 balance he owes in case no. 00–C–87–C and at least a portion of the $150 fee he has been directed to pay in case no. 04–C–374–C. Petitioner believes that if he can satisfy his debt in case no. 00–C–87–C, the *Mack* sanction will be lifted and he will be free to resume unhindered his efforts to file complaints claiming imminent danger of serious physical injury.

■ The first question is whether the *Mack* order imposed against petitioner serves to bar him from tendering the present motions to this court. I conclude that it does not. It would be unreasonable to hold that a litigant subject to a *Mack* order is precluded from communicating to the court valid concerns he might have about his ability to satisfy the sanctions imposed upon him. Rejection of such communications would be inconsistent with the Supreme Court's admonition in *In re Anderson*, 511 U.S. 364, 114 S.Ct. 1606, 128 L.Ed.2d 332 (1994), and *Sassower v. Mead Data Central, Inc.*, 510 U.S. 4, 114 S.Ct. 2, 126 L.Ed.2d 6 (1993), and the court of appeals' stated recognition of those cases in *Mack*, 45 F.3d at 186, that filing bars such as those imposed in *Mack* are to be designed to curb the particular abuse at issue.

■ The second question is whether the clerk of court erred in failing to return to petitioner his complaint in case no. 04–C–374–C. I take this question up now, because the answer to the question will determine whether petitioner owes the $150 fee he has been ordered to pay in case no. 04–C–374–C. If petitioner's complaint should have been returned to him unfiled, he should not be responsible for paying a filing fee for the erroneous filing and his motion for an order directing prison offi-

cials to allow him to pay the ordered fee will be mooted.

Although it is a close question, I conclude that it was not improper for the clerk to accept petitioner's complaint in case no. 04–C–374–C for filing, in light of the absence of clear direction from the court of appeals whether clerks of court are to ignore allegations of imminent danger of serious physical harm as excepted under § 1915(g) in cases in which an inmate's filings have been restricted under *Mack.*

It is true that the plain language of the *Mack* order issued against petitioner says that the clerks "will return, unfiled, any papers Dallas tenders in *any* civil litigation (other than a collateral attack on a criminal conviction)." (Emphasis added.) Nothing in the order implies that if petitioner were to file a civil action alleging imminent danger of serious physical injury, the clerk should make an exception for it. However, the restrictions imposed in *Mack* were not intended to be static in all their applications. They were designed specifically to curb the particular abuses in which Mack was engaging, and those abuses were legion. According to the facts presented in *Mack,*

> Richard Mack was sued in a Wisconsin state court by SSI, Inc. over a piece of machinery. He sought to remove the suit to federal district court. There was no legal basis for such removal, and the district court imposed a $100 sanction on Mack which he was to pay to his adversary, SSI, for filing a frivolous petition to remove. Mack did not pay but instead created a Wisconsin corporation having the same name as his adversary and advised the district court that he had paid the sanction, as ordered, to SSI——but he meant his own corporation, though he did not tell the court this. When the district court learned of his fraud, it increased the sanction to

$500, and Mack, again without complying, appealed to this court-appealed and asked us to strike the appearance of the law firm that represents his adversary, on the ground that SSI had fired the firm. But Mack was referring to his SSI, whereas the law firm represents the SSI that had sued him in state court. The motion was denied, but Mack renewed it, and this time in denying his motion we directed him to show cause why we should not summarily affirm the district court's sanctions order and impose additional sanctions under Rule 38 of the Federal Rules of Appellate Procedure. Mack did not respond and on July 21, 1994, we summarily affirmed the district court's order and imposed an additional sanction on Mack (again payable to his adversary) of $5,000. The district court meanwhile enjoined Mack from filing any additional motions without leave of court, and he has appealed from the injunction as well as from the district court's order imposing the $500 sanction. He has also taken to sending abusive letters to judges of this court. And he has yet to pay a cent of the sanctions imposed on him.

*Support Systems International, Inc. v. Mack,* 45 F.3d 185–186. In tailoring its sanction to curb Mack's flagrant abuse of judicial process, the court of appeals excepted habeas corpus applications and any papers Mack might wish to file in defense of a criminal case against him. It also considered and rejected two other possible exceptions:

> The first is for civil rights suits. These protect liberty, though not in quite the same sense as the defense of a criminal case or a writ of habeas corpus. But there are three independently sufficient reasons not to make an exception for civil rights suits in this instance. The first is that one who like Mr. Mack has made repeated efforts to defraud the

federal courts and who has defied and scoffed at their orders and abused their personnel has no equity to bring any sort of civil action other than, at most, an action for habeas corpus until he has complied with the outstanding orders against him. The second reason against the exception is that the efficacy of a no-filings order as a means of coercing Mack to comply with the sanctions orders already entered against him would be undermined by so broad an exception as one for all civil rights suits. Third, he could no doubt recast his frivolous filings in the form of civil rights complaints, a ploy that the court could defeat only by a laborious specification of the subject matter encompassed by the filings——laborious not only to draft, but also to monitor.

The second possible exception to the no-filings order would be for proof of indigency. Maybe Mr. Mack does not have [the amount of the sanctions imposed]. But he has never suggested this, though asked to explain why he had not paid any part of the sanctions imposed against him, including the very modest $100 with which the district court began. We do not see why we should now invite him to plead poverty.

*Id.* at 187.

In discussing the possibility that, under circumstances less egregious than those present in *Mack*, it might have imposed a different filing bar, the court clearly anticipated that additional exceptions might be warranted in cases dissimilar from *Mack*. Indeed, exceptions and clarifications already have been made to *Mack* restrictions. For example, in *Matter of Skupniewitz*, 73 F.3d 702, 705 (7th Cir.1996), the court of appeals interpreted its filing restriction order in *Mack* to except filings Mack was required to file in civil actions "in a purely defensive mode, where he is cast as a defendant or respondent." In addition, in *Montgomery v. Davis*, 362 F.3d 956, 957 (7th Cir.2004), the court of appeals modified a standard *Mack* order to preclude habeas corpus petitions other than those "attack[ing] a state court imposed criminal judgment." In that case, two restricted litigants had been identifying their pleadings as petitions for writs of habeas corpus in an effort to take advantage of the original exception written into their *Mack* order. Although the modification in *Montgomery* was designed to tighten, not loosen, the restrictions previously imposed, the modification did what is was supposed to do, that is, effect a natural consequence tailored to the particular abuse at issue.

In addition to tailoring *Mack* orders as the need arises, the court of appeals has hinted in *Smith v. Gilmore*, 111 F.3d 55 (7th Cir.1997), that a change in the law might affect the way a district court utilizes *Mack* to protect itself and other federal courts in the circuit against abusive litigants. In *Smith*, the district court had imposed a fine and a *Mack* restriction on a prisoner who had filed repeated frivolous collateral attacks on his criminal conviction. Because the prisoner had been abusing the writ of habeas corpus, the district court tailored the *Mack* restriction to bar the prisoner from filing further habeas corpus actions. The court of appeals upheld the district court's imposition of a financial sanction against the prisoner. However, it vacated the *Mack* restriction, holding,

> We made an express exception in *Mack* for habeas corpus. 45 F.3d at 186. What is more, the new law [28 U.S.C. § 2244(b)(3), a statute governing successive habeas corpus petitions enacted on April 24, 1996, after the court of appeals issued its decision in *Support Systems International v. Mack* ] robs the *Mack* order of any function that it might otherwise perform in the habeas corpus arena.

*Smith,* 111 F.3d at 56.

Like § 2244(b)(3), the three-strike provision in 28 U.S.C. § 1915 was enacted after *Mack* was decided. Congress created that section specifically to protect the judiciary from prisoner litigants who have recorded a filing history of legally meritless lawsuits. The statute exempts cases in which the prisoner is alleging imminent danger of serious physical injury. It is conceivable that, if directly presented with the question, the court of appeals would rule that civil cases alleging imminent danger of serious physical injury should be exempted from the general bar under *Mack* against all civil actions. Thus, I conclude that it was prudent for the clerk of this court to choose to file petitioner's action and send it to chambers for review in lieu of returning petitioner's complaint to him unfiled. *See, e.g., Ciarpaglini v. Saini,* 352 F.3d 328 (7th Cir.2003)(remanded for district court's failure to review three-strike prisoner's well-pleaded allegations to insure lack of imminent danger; *Mack* order not entered for appeal). Having successfully filed his action in case no. 04–C–374–C, petitioner owes the filing fee, despite the fact that the case was subsequently rejected on the ground that the allegations of imminent danger were implausible.

■ I turn then to petitioner's motions for an order directing prison officials to pay his $150 fees in case nos. 00–C–87–C and 04–C–374–C from his prison trust fund account. In his motions, Dallas points out that "the institution here at the resource center has not charged to my inmate account $150 fee for the matter of *Dallas v. Bartow,*" case no. 04–C–374. In addition, he states, "I am requesting an order to compel the business [office] to charge to my account the $150 for filing my complaint" in *Dallas v. Gamble,* 00–C–87–C. To support his motions, petitioner has submitted a trust fund account statement for the period beginning January 10, 2006 and

ending July 7, 2006. From this statement, it appears that over this period, petitioner has been receiving regular payments to his account in amounts ranging from $5.40 to $7.20. Each time a deposit is made, a portion of the deposit has been allocated to petitioner's release account and another portion has been appropriated to repay legal loans to the state. Petitioner appears to be spending the remainder of his income at the commissary. Although petitioner's average monthly income over the period of his statement amounts to only $12.85, an entry at the top of the statement reveals that petitioner's average monthly balance is $220.20. Presumably, petitioner's average monthly balance is significantly higher than his average monthly income because the prison is including in its calculation of the average monthly balance the amount petitioner is carrying from month to month in his release account.

■ The first question is whether this court has the authority to require prison officials to take money from petitioner's release or regular account to pay his debts in case no. 00–C–87–C and 04–C–374–C. The answer to that question is no. As the court of appeals has made clear repeatedly, the installment payment mechanism under § 1915(b) applies only when a prisoner has been allowed to proceed *in forma pauperis.* See, e.g., *Newlin v. Helman,* 123 F.3d 429, 432 (7th Cir.1997), *rev'd on other grounds by Lee v. Clinton,* 209 F.3d 1025 (7th Cir.2000). But petitioner owes this court $150 in case no. 00–C–87–C and $150 in case no. 04–C–374–C. How is he to pay these amounts? The answer is provided in *Alexander v. United States.,* 121 F.3d 312 (7th Cir.1997). In that case, the court of appeals addressed the question of coercing payment of a money sanction from a prisoner who had filed repeated frivolous collateral attacks on his

criminal conviction. The court noted first that because the Prison Litigation Reform Act does not apply to collateral attacks on criminal convictions, "tapping the prisoner's trust account under [§ 1915(b)(2) ] is not an option." Nevertheless, to insure that Alexander had an incentive to pay the sanction and cease his production of frivolous filings, the court entered a *Mack* order barring him from filing any kind of civil lawsuit and suggested the following means for collecting the money sanction:

> In connection with this order we will notify Alexander's prison of the fine; perhaps the Bureau of Prisons will set aside a portion of his income for payment under its Inmate Financial Responsibility Program even though the PLRA is not directly applicable.

*Id.* at 315.

Petitioner Dallas is in the same boat as inmate Alexander. Because § 1915(b)(2) does not apply to persons who have struck out under § 1915(g), I cannot order prison officials to pay the amounts he owes using the installment method prescribed in § 1915(b)(2). Instead, I will notify the warden of the Wisconsin Resource Center of petitioner's obligations to this court so that he can work with petitioner to set aside some or all of petitioner's income to pay his debt. To the extent that state law governs the use of petitioner's release account funds, petitioner is bound by those laws.

One more matter requires attention. Although I do not believe that the clerk of this court erred in filing petitioner's complaint in case no. 04–C–374–C because it contained allegations that petitioner was in imminent danger of serious physical injury, it is readily apparent that petitioner holds a persistent delusional belief that he is slowly being poisoned by state officials. His allegations of imminent danger in this regard do not merit the court's repeated attention. Yet there exists a possibility, however remote, that at some future time petitioner might be in imminent danger of serious physical injury as a result of unconstitutional conduct on the part of state officials. For that reason, unless and until the court of appeals rules expressly that complaints alleging imminent danger of serious physical injury are not to be exempted from a *Mack* order, I will not order the clerk of court to return such complaints to petitioner or, for that matter, to any inmate against whom a standard *Mack* order has been entered. Instead, I will utilize the mechanism devised in *Alexander v. United States* to reduce the burden of paper-moving and explanation-writing and conserve judicial time for litigants who deserve the court's attention. The clerk shall forward to chambers for review any future complaint from petitioner asserting that he is in imminent danger of serious physical injury. Unless the court orders otherwise, these complaints will be deemed rejected without the need for judicial action on the 30th day after submission.

### ORDER

IT IS ORDERED that petitioner's motions for an order directing prison officials to pay from his trust fund account the $150 fee he owes for filing case no. 00–C–87–C and the $150 fee he owes for filing case no. 04–C–374–C are DENIED.

Further, the clerk of court is requested to notify the warden of the Wisconsin Resource Center of petitioner Dallas's obligation to pay the amounts noted above. It will be up to the warden to determine how amounts deposited to petitioner's account might be utilized to pay his debt to this court, even though the installment payment provision in 28 U.S.C. § 1915(b)(2) is not directly applicable.

Finally, IT IS ORDERED that any future complaints petitioner submits in

which he alleges imminent danger of serious physical injury may be routed to chambers for review and that such lawsuits will be deemed rejected, without the need for judicial action, on the 30th day following receipt, unless the court orders otherwise.