NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 15, 2020[*]
Decided October 21, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

Nos. 20-1882 & 20-1907

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. |
| *v.* | No. 2:06 CR 114 |
| LARRY COCHRAN, *Defendant-Appellant.* | James T. Moody, *Judge.* |

**O R D E R**

Larry Cochran, a wheelchair-bound federal prisoner whose health has deteriorated over the years, seeks further relief from his criminal sentence. Eleven months ago, we remanded his case so that the district court could consider his pending motion for compassionate release under § 603 of the First Step Act, Pub. L. 115-391, 132 Stat. 5194 (2018). *United States v. Cochran,* 784 Fed. App'x 960 (7th Cir. 2019). On

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

remand, the court denied that motion and Cochran's later request for relief under Amendment 782 to the Sentencing Guidelines. The court acted within its discretion when it denied his motion for compassionate release, and he was not entitled to a reduction under Amendment 782 because he had already received one, so we affirm.

Cochran is serving a sentence for possession of cocaine base with intent to distribute. *See* 21 U.S.C. § 841(a)(1); *United States v. Cochran,* 309 Fed. App'x 2 (7th Cir. 2009). The district court originally sentenced him to 405 months in prison but later reduced his prison term to 372 months under Amendment 782, which retroactively reduced his offense level. In the years that followed, Cochran filed numerous letters, motions, and petitions in the district court—as well as in this court—seeking relief from his conviction and sentence. None succeeded.

On December 21, 2018, Congress passed the First Step Act, 132 Stat. 5194. Section 404 of the Act modified 21 U.S.C. § 841(b)(1)(A)—the subsection under which Cochran was convicted—by retroactively applying the Fair Sentencing Act's reduction of the statutory maximum penalty to 240 months' imprisonment. *See* Fair Sentencing Act, Pub. L. 111-220, § 802, 124 Stat. 2372 (2010) (codified at 21 U.S.C. § 841(b)(1)(A)). Section 603, meanwhile, changed the process for seeking compassionate release. It allows prisoners to ask courts for compassionate release without needing the BOP to petition on their behalf. Prisoners must still file requests for release with the BOP, but they can now access the courts on their own if the BOP fails to respond or if it denies the request and they exhaust their administrative remedies by appealing.

Almost immediately, Cochran began filing a flurry of motions seeking relief under the First Step Act. First, he argued that, under § 404, his 327-month sentence exceeded the new 240-month statutory maximum for his offense. Later, he invoked § 603 and asked for compassionate release because of his deteriorating health. He asserted that he is blind and paralyzed and suffers from a host of other health problems, including nerve damage, chronic pain, respiratory disorders, PTSD, panic attacks, major depressive disorder, and agoraphobia. He also submitted a letter—purportedly from his warden—stating that the BOP had approved his petition for compassionate release.

The district court granted in part Cochran's many pending requests under § 404 and reduced his term of imprisonment to 240 months. Cochran appealed, disputing (among other things) the drug-quantity calculations in the presentence investigation report it used. He also continued to pepper the district court with requests for the status of his compassionate-release motion, which the court had acknowledged but not ruled upon. At that point, we rejected his challenges to the PSR's drug-quantity calculations

and remanded his case for the court to consider the motion for compassionate release. *See Cochran*, 784 Fed. App'x at 962.

On remand, the district court ordered the government to provide the status of Cochran's administrative petition for release. The government responded that the BOP had denied the petition and asserted that the letter Cochran had submitted to the court with his § 603 motion was a forgery. It attached what it said was his prison warden's original letter denying Cochran's petition, Cochran's version of it, and an internal email stating that Cochran had originally appeared to be medically cleared for compassionate release but later "was found not to be qualified." Cochran, for his part, submitted several more requests for the court to rule on his motion. In March 2020, he expanded on his reasons for seeking compassionate release: In light of the ongoing pandemic, he said, his physical condition presented an especially compelling circumstance because he had a heightened risk of suffering severe symptoms if he contracted COVID-19.

The district court denied his motion. Acknowledging that Cochran's medical condition was serious and made him an unlikely candidate for violent crime, it nonetheless concluded that his release would create a danger to the community. Given the "disrespect and hostility towards the law" Cochran demonstrated during his trial (among other things, he repeatedly denied his identity, refused to be put under oath, and had to be removed from the courtroom for disruptive behavior), the court had "little confidence that [he] would be law-abiding upon release." In light of his "extensive" filings over the years, it believed he was mentally capable of orchestrating criminal enterprises despite his physical condition. It explained that requiring him to serve the remaining three years of his prison sentence was necessary to promote the goals of sentencing. The district court declined to resolve the factual dispute about whether Cochran forged the BOP letter because, it explained, it would not exercise its discretion to order his release either way.

In the meantime, Cochran had filed a successive motion to reduce his sentence under Amendment 782. He asserted that the district court's decision on his original motion under that amendment was based on a PSR that contained "clerical errors" in the drug quantities that, in post-arrest statements, he had admitted to controlling. Because the court had since corrected those errors and had used an amended PSR in reducing his sentence under § 404, he argued, he was entitled to a second re-sentencing under Amendment 782 to receive the benefit of those corrections. The court treated the motion as a request to reconsider its prior rulings on his motions for relief under Amendment 782 and § 404 and denied it.

On appeal, Cochran first contends that the district court abused its discretion in denying his request for compassionate release under § 603. Emphasizing his miserable physical condition, he argues that the court's conclusion that he still presents a danger to the community cannot be squared with the facts of his case. Though he says that he recognizes the seriousness of his criminal conduct, he argues that, had the court properly weighed the sentencing factors under 18 U.S.C. § 3553(a), it would have recognized that his deteriorating health outweighs the gravity of his offense.

The district court, however, permissibly denied his motion. Under § 3582(c)(A)(i), a sentencing court "may"—but is not required to—reduce a defendant's prison term for "extraordinary and compelling reasons" if a reduction would be consistent with any applicable Sentencing Commission policy statements. The applicable policy statement provides that a reduction is appropriate if: (1) The defendant suffers from a serious medical condition that substantially diminishes his ability to care for himself; (2) the defendant is not a danger to the community; *and* (3) the reduction would be consistent with the § 3553(a) factors. *See* U.S.S.G. § 1B1.13.

Here, the district court assumed that Cochran's medical conditions were an "extraordinary and compelling circumstance" and took seriously its responsibility to assess whether release would be appropriate. It acknowledged that, because of his physical condition, he was unlikely to commit violent crimes in the future. Nonetheless, given its familiarity with his conduct—including his disruptive behavior during trial, his continuing assertions that he is imprisoned for a non-existent offense, and his numerous filings through the years—it reasonably concluded that he still presents a danger to society. Cochran has not demonstrated that the court relied on any erroneous facts or otherwise abused its discretion in reaching that conclusion.

Further, the district court supported its decision by weighing the factors under § 3553(a). First, it considered Cochran's decades-long criminal history, as well his post-conviction behavior, and found that it showed a "disregard for law enforcement" and "a hostile and obstructionist attitude toward judicial proceedings." Next, the court considered the goals of sentencing and determined that requiring Cochran to serve the final three years of his sentence was necessary to promote respect for the law, provide just punishment, protect society, and deter him from future criminal behavior. Another judge may well have ruled differently, but the district court permissibly concluded that continued imprisonment was necessary. *United States v. Adams*, 879 F.3d 826, 829 (7th Cir. 2018). Cochran's disagreement with how the court weighed the § 3553(a)

factors—as we have previously explained to him—is not enough to overturn the discretionary decision. *See Cochran*, 784 Fed. App'x at 692.

Cochran next maintains that he is entitled to additional relief under Amendment 782 because, since ruling on his first request for a reduced sentence under that amendment, the district court has amended his PSR to correct "clerical errors." However, "prisoners have only one bite at the apple per retroactive amendment," because "the statute creates a rule under which successive motions are prohibited and should be denied as outside the scope of the statute." *United States v. Beard,* 745 F.3d 288, 291–92 (7th Cir. 2014). In any event, the errors Cochran cites did not affect his offense level or guidelines range. Further, the district court used the amended PSR last year in reducing his sentence under § 404. That PSR again set his guidelines range at 262-372 months, and we rejected his challenges to those calculations. *See Cochran*, 784 Fed. App'x at 692. Even if Cochran were entitled to a reconsideration, he could receive no benefit from it.

Finally, Cochran seeks to recuse the district judge. He contends that the judge has exhibited bias and prejudice towards him by presiding over his trial for a non-existent offense and repeatedly ruling against him. As we have previously told him, however, "adverse litigation decisions are not grounds for recusal." *Cochran*, 784 Fed. App'x at 963. The record is devoid of any evidence of bias.

We note that, since his motion for compassionate release was denied on May 1, 2020, Cochran has continued to pepper the district court with filings that only rehash arguments it has already heard and ruled upon. In the past, we have told Cochran that submitting repetitive filings over the same issues could result in sanctions. *United States v. Cochran*, 634 Fed. App'x 596, 597 (7th Cir. 2016). Today we again caution him that such behavior may result in monetary sanctions and a filing bar. *See Alexander v. United States*, 121 F.3d 312, 315 (7th Cir. 1997).

AFFIRMED