**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GALE ROBERTS, individually and d/b/a
"Gone Working" (Pro Se),

     Plaintiff - Appellant,

v.

GENERATION NEXT, LLC; ESTATE OF
RICHARD COOK; KATHARINE COOK
FISHMAN; PAUL MATTHEW CASTER;
ANTIQUITY ENCOUNTER; JOHN
MELANCON; EXPEDITION
RESOURCES, LLC; EXPLORATION
OPES, LLC; DONALD PATTERSON;
GERALD KEMLER; HOWARD TALKS;
WILLIAM FLOTO; JANE AND JOHN
DOES,

     Defendants - Appellees.

No. 20-2068
(D.C. No. 1:18-CV-00975-WJ-LF)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.
_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This appeal involves a dispute about a hunt for buried treasure. Appellant

Gale Roberts, individually and for his company, Gone Working ("GW"), filed the

underlying lawsuit claiming he agreed with the above-named defendants and others

to fund a treasure exploration mission on Black Mesa, a hill area in New Mexico. He

claimed the defendants conspired to find the buried treasure without his knowledge,

relocate the cache offsite, and launder the proceeds, thus depriving him of his share.

The district court dismissed some claims against some defendants pursuant to Fed. R.

Civ. P. 12(b)(6) and dismissed the remaining claims on summary judgment. Roberts

appeals only portions of the dismissal and summary judgment orders.[1] Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

## Factual Background

Richard Cook's company, Generation Next, LLC ("Gen Next"), owned

property on Black Mesa. Cook's daughter, Katherine Fishman, was legal counsel for

Gen Next, and Paul Caster, another family member, was its general manager. Cook

died in 2016. Fishman is the personal representative of his estate. When discussing

---

[1] Roberts has abandoned any arguments he might have made regarding aspects of the dismissal and summary judgment orders he did not expressly challenge on appeal. *See Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013). Accordingly, we consider only the issues raised in the opening brief. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief are deemed abandoned or waived." (internal quotation marks omitted)). We deny Roberts' request for leave to re-file a brief of up to forty-five pages. *See* Aplt. Opening Br. at 25, 28.

Cook, Fishman, Caster, and Cook's estate as a group, we refer to then collectively as "the Cook Defendants."

Cook hired John Melancon, an archeologist, to help lay claim to the gold and artifacts expected to be found on Black Mesa. Melancon was one of four managing members of Expedition Resources, LLC. In 2010, Expedition Resources and Gen Next entered into a one-year exclusive recovery agreement giving Expedition Resources the right to access the property for exploration. The other managing members of Expedition Resources were Donald Patterson, Gerald Kemler, and Howard Talks. Talks was a financier of gold-finding expeditions, and Patterson and Kemler were both treasure hunters. When discussing Expedition Resources, Melancon, Patterson, Kemler, and Talks as a group, we refer to them collectively as "the Expedition Resources Defendants."[2] Expedition Resources ultimately lacked the necessary funding and the agreement expired without Expedition Resources ever having entered the property.

According to the First Amended Complaint ("FAC") Roberts and Expedition Resources entered into a Joint Venture Agreement in November 2012 under which Roberts agreed to finance and participate in an expedition to search for and recover

---

[2] The original complaint named Exploration OPES, LLC, another entity related to some or all of the Expedition Resources Defendants, as a defendant, and although the First Amended Complaint listed Exploration OPES in the caption, it did not assert any claims against Exploration OPES, and Roberts does not raise any claims on appeal involving Exploration OPES. Accordingly, we do not discuss its alleged involvement in the events giving rise to Roberts' claims either in this background section or our analysis of the issues on appeal.

gold and artifacts from Black Mesa in exchange for half of the discovered cache. Patterson negotiated the agreement on behalf of Expedition Resources and he and Roberts were the two signatories. The agreement provided that Roberts would be compensated only if gold and artifacts were found, and that any capital he contributed was "risk capital," meaning he would be reimbursed out of the proceeds, and Expedition Resources would have no liability for capital costs if the venture was unsuccessful. Aplt. App., Vol. II at 185. The FAC alleged that Melancon brokered the agreement with the approval of Cook, who owned the treasure maps that were to be used in the expedition, and that Cook "agreed to honor another one-year exclusive recovery agreement for a 50/50 split." *Id.* Vol. I at 25.

In February 2013, several months after Expedition Resources and Roberts entered into the Joint Venture Agreement, Gen Next entered into an exclusive one-year land access and recovery agreement with Melancon's company, Antiquity Encounter, to search for and recover gold and artifacts from Black Mesa ("the Antiquity Recovery Agreement"). The FAC alleged that Melancon secured this agreement with Gen Next "on behalf of and in accordance with the Joint Venture Agreement . . . Roberts had with Expedition." *Id.* at 21.

In March 2013, two gold targets were located using equipment Roberts had purchased for the expedition. As the targets were located, tension grew between Roberts, Patterson, and Kemler, the three treasure hunters on the expedition. According to the FAC, unbeknownst to Roberts, Patterson and Kemler located two additional gold targets on March 6 with the help of William Floto, another treasure

4

hunter. Roberts alleged that Patterson, Kemler, and Floto dug up the gold in one of those targets and moved it offsite, then Kemler hid the March 6 test results and he and the others manufactured false results to deceive Roberts about the two targets they had discovered.

Roberts began his excavation on March 16, 2013. "[S]everal days into the excavation," he discovered that Kemler had tried to hide the March 6 test results. *Id.* at 30. Later that month, Patterson and Kemler began transporting the gold and artifacts to Florida, where Floto lived. Roberts informed the Cook Defendants by e-mail about the false test results Patterson, Kemler, and Floto had given him. When the Cook Defendants did not respond, Roberts concluded they were part of the conspiracy to avoid giving Roberts a share of the treasure Patterson, Kemler, and Floto had taken from the property.

In September 2013, Cook and Roberts entered into a verbal agreement allowing Roberts to finish the excavation of the gold in the Black Mesa vaults. But the relationship between Roberts and other members of the team continued to deteriorate, and Caster and Fishman refused to allow him on the Black Mesa property. The Cook Defendants ultimately obtained a state court restraining order limiting Roberts' communication with them based on their claims that he had been acting irrationally and ambushed the then 87-year old Cook at his home in an attempt to gain entry to Black Mesa.

In February 2014, the Cook Defendants sent Roberts an email indicating that their relationship with him had ended, that no treasure had been found on Black

Mesa, and that they had "no intention of any further exploration on Black Mesa." *Id.* at 22. Contrary to that representation, however, Roberts alleged that soon after sending the email, Gen Next, Fishman, and Caster began removing gold and artifacts from one of the vaults.

Also in February 2014, Melancon and Patterson negotiated a "secret" verbal agreement with Cook and Caster to use satellite technology obtained from a non-party to further evaluate Black Mesa. *Id.* at 21. Fishman "cancelled" the agreement, however, because the Antiquity Recovery Agreement had not yet expired. *Id.* at 39. Angry that Fishman had cancelled the agreement, Patterson told Roberts he was no longer wanted on the expedition and confirmed that Cook, Fishman, Caster, Melancon, Patterson, Kemler, and Talks had all "joined in a global conspiracy to get rid of . . . Roberts" and deprive him of his share of the treasure. *Id.* Patterson also "unknowingly confessed" to digging up and removing gold from Black Mesa in March 2013. *Id.* at 40.

## Procedural Background

In February 2018, Roberts filed a lawsuit in the District Court for the District of Wyoming. The court concluded it lacked personal jurisdiction over the defendants and subject-matter jurisdiction over the claims, and it dismissed the complaint.

In October 2018, Roberts filed this nearly identical lawsuit in the District Court for the District of New Mexico, asserting claims for breach of contract, breach of the implied covenant (quasi-contract), conspiracy, conversion, tort (fraudulent inducement, intentional misrepresentation, and tortious interference with contract),

6

and equitable relief (promissory estoppel and quantum meruit/unjust enrichment) against the defendants individually and in various groupings.[3]  The contract and quasi-contract claims were based on both the Joint Venture Agreement between Roberts and Expedition Resources, and the Antiquity Recovery Agreement between Gen Next and Antiquity Encounter.  Those claims were asserted against all defendants, regardless of whether they were parties to the contracts, and alleged that Roberts was entitled to recover under the Antiquity Recovery Agreement as a third-party beneficiary.

The defendants moved to dismiss all of the claims against them under Fed. R. 12(b)(6) as either time-barred or for failure to state a claim.  As pertinent here, the district court:

- dismissed the conspiracy claim against all defendants both as time-barred and because civil conspiracy is not actionable as a separate claim;

- dismissed all claims based in tort against all defendants as time-barred;

- dismissed the contract and quasi-contract claims based on the Antiquity Recovery Agreement against all defendants because Roberts was neither a party nor a third-party beneficiary to that agreement;

- dismissed the contract and quasi-contract claims against the Cook Defendants based on the Joint Venture Agreement because they were not parties to that agreement;[4]

---

[3] The district court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1) ("[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States.").

[4] The FAC also asserted claims against the Cook Defendants for breach of contract based on the September 2013 verbal agreement between Cook and Roberts, and breach of an implied-in-fact contract based on Roberts' agreement to sign a no-contact order in exchange for Fishman's and Caster's promises to facilitate a face-

7

- dismissed the contract and quasi-contract claims based on the Joint Venture Agreement against Melancon, Talks, Kemler, Floto, and Antiquity Encounter because they were not involved in the contract negotiations and were not parties to the agreement, and Melancon's, Talks', and Kemler's roles as managing members in Expedition Resources did not subject them to liability for its contractual obligations; and

- dismissed the equitable claims against all defendants other than Patterson and Expedition Resources both as time-barred and because the dismissed defendants were not parties to contracts with Roberts and the FAC did not specify what promises and expectations those defendants breached.

The only claims that survived the motions to dismiss were the breach of contract, breach of the implied covenant, promissory estoppel, and quantum meruit/unjust enrichment claims against Expedition Resources and Patterson, who negotiated and signed the Joint Venture Agreement as a managing member of Expedition Resources. The district court later granted defendants' motions for summary judgment on those claims, concluding (1) Roberts was not entitled to relief under the Joint Venture Agreement because it expressly provided he would be reimbursed and compensated only if the expedition was successful, and he presented no evidence supporting his assertion that treasure was discovered on Black Mesa; (2) the implied covenant could not be used to override the express terms of the Joint Venture Agreement; and (3) equitable relief was not available for conduct governed by contract.

---

to-face meeting between Roberts and Cook. Roberts does not challenge the adverse rulings involving these claims, so we do not address them.

8

**Discussion**

**1. Standard of Review**

As an initial matter, we recognize that Roberts' pro se status entitles him to a liberal reading of his pleadings. *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003). We thus make some allowances for deficiencies, such as unfamiliarity with pleading requirements, failure to cite appropriate legal authority, and confusion of legal theories. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). But we "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Id.*; *see also Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (explaining that we "will not supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [his] behalf").

We review de novo both the dismissal of a complaint under Rule 12(b)(6) for failure to state a claim and the grant of summary judgment, applying the same standards that applied in the district court. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1278 (10th Cir. 2021) (Rule 12(b)(6) dismissal); *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020) (summary judgment).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In conducting our review, we disregard conclusory allegations, but accept all

9

well-pleaded facts as true, view them in the light most favorable to Plaintiffs, and draw all reasonable inferences in their favor. *Brooks*, 985 F.3d at 1281. Our duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Under the plausibility standard, dismissal for failure to state a claim is "proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (internal quotation marks omitted).

At the summary judgment stage, we "view facts in the light most favorable to the non-moving party and draw all reasonable inferences in [their] favor." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (ellipsis and internal quotation marks omitted). "Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016) (internal quotation marks omitted).

## 2. Rejection of Third-Party Beneficiary Theory

Roberts first contends the district court erred by concluding he was not a third-party beneficiary of the Antiquity Recovery Agreement.[5] We disagree.

---

[5] Roberts framed this argument as a due process argument, but he did not provide any legal support for the assertion that the district court's adverse ruling on the third-party beneficiary issue violated his constitutional right to due process. Accordingly, we disregard that aspect of the argument.

Under New Mexico law, "one who is not a party to a contract cannot maintain suit upon it." *Fleet Mortg. Corp. v. Schuster*, 811 P.2d 81, 82 (N.M. 1991). But "[a] third party may be a beneficiary of [a] contract, and as a beneficiary may have an enforceable right against a party to a contract." *Id.* "Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party." *Id.* at 82-83. "Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Valdez v. Cillessen & Son, Inc.*, 734 P.2d 1258, 1264 (N.M. 1987).

The signatories to the Antiquity Recovery Agreement were Cook and Fishman as managers of Gen Next, and Melancon for Antiquity Encounter. The agreement gave Melancon and Antiquity Encounter "the exclusive right to access and perform a non-destructive geophysical survey(s) on Black Mesa" from February 2013 through February 2014, and provided for a fifty-fifty split between Gen Next and Antiquity Encounter of any "valuables and artifacts."[6] Aplt. App., Vol. I at 70-71. The agreement identified Roberts as one of Melancon's team members, and required Gen Next to protect the confidentiality of Roberts' "proprietary geophysical technology." *Id.* at 72. But the agreement did not address how Melancon would compensate his

---

[6] In evaluating whether Roberts' factual allegations meet the plausibility standard, we consider both his complaint and the documents attached as exhibits to the complaint, including the Antiquity Recovery Agreement. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

11

team, much less suggest Roberts or any other team member would share in the fifty-fifty split between Gen Next and Antiquity Resources.

We agree with the district court's conclusion that the contract does not indicate that the parties intended to benefit Roberts.[7] Contrary to his assertion, neither the fact that Fishman and Caster knew about the Joint Venture Agreement when they signed the Antiquity Resources Agreement, nor Melancon's alleged promise "that [Roberts'] interests, as the financier [of the expedition under the Joint Venture Agreement] would be protected," Aplt. Opening Br. at 8, establishes that Roberts was a third-party beneficiary of the Antiquity Resources Agreement. Cook's and Fishman's awareness of the Joint Venture Agreement and of Roberts' role as financier of the expedition is simply not a basis for concluding they intended to make him a beneficiary of the Antiquity Recovery Agreement. And while the two agreements were interrelated—the Joint Venture Agreement governed the conduct of the Black Mesa expedition and the Antiquity Recovery Agreement gave the team access to the property and governed what they could do there—the fact that both agreements were necessary for the expedition to happen does not make the parties to one agreement third-party beneficiaries of the other. Moreover, any promise

---

[7] The district court held that "[a]t most" the provision identifying Roberts as a member of Melancon's team made him "an incidental beneficiary"—someone who has no contractual rights under the contract but who "'will derive a benefit from its performance.'" Aplt. App., Vol. I at 339 (quoting *Fleet Mortg*, 811 P.2d at 83 (holding incidental beneficiary "had no right to recover" under contract)). The issue before us is whether Roberts was a third-party beneficiary, not whether he was an incidental beneficiary, so we need not address that issue.

12

Melancon made to protect Roberts' interests could not make Roberts a third-party beneficiary of the Antiquity Recovery Agreement without the agreement of the other parties to that contract. Such a promise might have affected how the proceeds of any discovered cache would have been divided between Roberts and Expedition Resources under the Joint Venture Agreement, but it would not have affected the division of proceeds between Gen Next and Antiquity Resources under the Antiquity Recovery Agreement.

### 3. Dismissal of Contract and Quasi-Contract Claims Against Melancon, Talks, Kemler, and Floto

Roberts next contends the district court erred by dismissing the contract and quasi-contract claims based on the Joint Venture Agreement against Melancon, Talks, Kemler, and Floto. Again, we disagree.

Expedition Resources is a limited liability company. Under New Mexico law:

> the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the . . . company. No member or manager of a limited liability company . . . shall be obligated personally for any debt, obligation or liability of the . . . company solely by reason of being a member or manager of the . . . company . . . . A person may be liable for any act or omission performed in his capacity as a manager of a limited liability company if there is a basis for liability. Nothing in this section shall be construed to immunize any person from liability for the consequences of his own acts or omissions for which he otherwise may be liable.

N.M. Stat. Ann. § 53-19-13. Under this statute, a member of a limited liability company may be personally liable for his own tortious acts, whether or not he was acting for the company, but not for its contractual obligations.

13

The allegations in the FAC establish that the Joint Venture Agreement was between Expedition Resources and Roberts. Melancon, Talks, Kemler, and Floto were not parties to and were therefore not liable under the contract, and Melancon, Talks, and Kemler cannot be held personally liable for Expedition Resources' obligations under the contract. *See id.* Accordingly, the district court correctly dismissed the contract and quasi-contract claims against these defendants. *See id.* § 53-19-14 (providing that subject to an exception not applicable here, "[a] member of a limited liability company is not a proper party to a proceeding against the limited liability company solely by reason of being a member of the limited liability company"); *see also Kreischer v. Armijo*, 884 P.2d 827, 829 (N.M. Ct. App. 1994) (explaining that agents of a corporate entity cannot be held personally liable for its contractual obligations and affirming dismissal of claim against corporate agent based on the company's contract).

### 4. Dismissal of Conspiracy, Conversion, and Tort Claims as Time-Barred

We also reject Roberts' contention that the district court erred by dismissing the conspiracy, conversion, and tort claims as time-barred.

The basis for these claims was as follows:

- **Conspiracy:** The FAC alleged the conspiracy claim against all defendants individually and in various groupings, and although the specific conduct underpinning the claim varied from defendant to defendant, it was based on the same basic theory as to all of them—that they schemed to prevent Roberts from discovering hidden reserves of gold in order to deprive him of his share of the treasure. Based on the factual allegations in the FAC, the court determined that the claim was based on events that occurred before September 2013.

14

- **Conversion:** The conversion claim was asserted against all defendants and was based on the alleged discovery of treasure on Black Mesa, its removal from the property, and the laundering and division of the proceeds among the defendants, all without Roberts' knowledge.

- **Fraudulent Inducement:** The claim against the Expedition Resources Defendants alleged that they made false representations to Roberts in November 2012 when they solicited his participation in an expedition on Black Mesa. The claim against the Cook Defendants alleged that they manipulated Roberts into signing the temporary restraining order in October 2013 by telling him they would facilitate a face-to-face meeting between him and Cook. Floto and Antiquity Resources were not named in the fraudulent inducement claim.

- **Intentional Misrepresentation:** The intentional misrepresentation claim against Patterson and Kemler alleged that they gave Roberts misleading test results and other data to hide their discovery of additional gold targets in March 2013. The claim against the Cook Defendants was based on the February 2014 email telling Roberts that the expedition had found no treasure and that they did not intend to conduct further exploration on Black Mesa. The other defendants were not named in this claim.

- **Tortious Interference with Contract:** This claim was asserted only against Floto, Fishman, and Caster. It alleged that Floto located and removed treasure from Black Mesa in March 2013 "without giving any of the existing agreements and contracts any consideration," Aplt. App., Vol. I at 51, and that in September 2013, Fishman and Caster interfered with the verbal agreement between Roberts and Cook.

The district court concluded, and Roberts does not dispute, that the applicable limitations periods were four years for the conversion claim and any fraud-based claim, three years for the other tort claims, and three or four years for the conspiracy claim, depending on whether it was grounded in tort or fraud. *See* N.M. Stat. Ann. § 37-1-4 (establishing four-year limitations period for conversion and fraud claims); *id.* § 37-1-8 (establishing three-year limitations period for personal injury actions); *Peralta v. Peralta*, 131 P.3d 81, 84 (N.M. Ct. App. 2005) (applying personal injury statute of limitations period to tortious interference with expected inheritance claim).

15

Based on the factual allegations in the FAC, the court concluded that all of these claims accrued by February 2014, and that because Roberts did not file his complaint until October 2018, the claims were all time-barred under either a three- or four-year limitations period.

In so concluding, the district court rejected Roberts' arguments that the limitations periods did not apply under New Mexico's savings statute and that the claims were timely under the discovery rule. Roberts reasserts those arguments on appeal and we reject them too.

New Mexico's savings statute provides:

> If, after the commencement of an action, the plaintiff fail[s] therein for any cause, except negligence in its prosecution, and a new suit be commenced within six months thereafter, the second suit shall, for the purposes herein contemplated, be deemed a continuation of the first.

N.M. Stat. Ann. § 37-1-14. Relying on this statute, Roberts maintains that his claims were timely because he filed the complaint in this case within six months after the dismissal of the Wyoming suit. The district court disagreed, concluding that the savings statute was inapplicable both because most of Roberts' claims were already time-barred when he filed the Wyoming suit, and because his initial filing in the wrong forum constituted "negligence in prosecution." *See Barbeau v. Hoppenrath*, 33 P.3d 675, 679 (N.M. Ct. App. 2001) (holding plaintiff's unexcused failure to file suit in the correct jurisdiction was negligence that precluded application of the savings statute). Roberts take issue with the latter conclusion, maintaining that it was reasonable for him to file suit in Wyoming because he is a Wyoming resident and

16

was in Wyoming when he negotiated the Joint Venture Agreement. But we agree with the district court's determination that, even as a pro se litigant, Roberts could not reasonably have believed Wyoming had personal jurisdiction over the defendants and subject matter jurisdiction over the lawsuit given that none of them lived in or had the requisite contacts with Wyoming and the relevant events all happened in New Mexico. *See id.* (savings statute inapplicable where the complaint "on its face defeated subject matter jurisdiction," there was no basis for personal jurisdiction over the defendants, and the flawed choice of forum was not "an innocent mistake or an erroneous guess at an elusive jurisdictional fact known only to the defendants or any other circumstance that might serve to excuse what otherwise appears clearly to be negligence").

As for the discovery rule, Roberts maintains he did not discover all of the facts relevant to the conspiracy and conversion claims until as late as 2018 and that the district court thus erred by dismissing the claims as time-barred. The district court agreed that under the discovery rule, the claims accrued when Roberts knew or should have known the essential facts giving rise to the claims. *See State ex rel. Pub. Emps. Ret. Ass'n v. Longacre*, 59 P.3d 500, 507 (N.M. 2002) (holding that the accrual date for a New Mexico statute of limitations is "usually . . . the date of discovery"). But the court rejected his delayed discovery argument, pointing to the allegations in the FAC that Roberts' excavation began in mid-March 2013, and that the "team was several days into the excavation when [he] discovered that . . . Kemler had tried to hide the [March 6] test results." Aplt. App., Vol. I at 30; *see also id.* (alleging that

17

after discovering the hidden test results, Roberts found "significant ground disturbance" at what appeared to be the site of the new gold targets).

Roberts does not dispute that he discovered the hidden test results in March 2013, and he acknowledges that "the majority of the conspiracies began" in that timeframe. Aplt. Opening Br. at 11. Instead, relying on criminal statutes and caselaw inapplicable here, he contends the conspiracy claim alleged an ongoing conspiracy that none of the defendants withdrew from, that the conversion "is still happening to this day," *id.* at 13, and that the statute of limitations did not start running until sometime in 2018, when Roberts learned more details about the defendants' actions.[8] Construing these argument liberally, we assume Roberts is invoking the continuing wrong doctrine, which can be used to toll a statute of limitations. *See Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1431 (10th Cir. 1996) (construing New Mexico law and applying the doctrine to toll the statute of limitations for fraud and negligent misrepresentation). Under the continuing wrong doctrine, "where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury." *Id.* at 1430. But "the doctrine cannot be employed where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *Id.* at 1431 (internal quotation marks omitted).

---

[8] The district court did not expressly address the ongoing conspiracy and conversion argument in its dismissal orders, but implicitly rejected it in concluding that the claims were time-barred.

Roberts does not dispute that he knew in March 2013 that Patterson and Kemler had located the two additional gold targets and tried to hide the test results, and the allegations in the FAC establish that by February 2014, he knew treasure had been removed from the property and sold, that the proceeds had been laundered, that he was barred from the Black Mesa, and that none of the defendants intended to include him in any further exploration efforts. Roberts' injury was thus "definite and discoverable" by February 2014. *See id.* And while he may have learned more details about defendants' alleged wrongdoing between 2014 and 2018, that information did not give rise to a "continuing or repeated injury," as required for tolling under the continuing wrong doctrine. *See id.* at 1430. Because Roberts knew the essential facts underpinning these claims no later than February 2014 and did not file this lawsuit until October 2018, the district court correctly dismissed the claims as time-barred.

Finally, we acknowledge Roberts' one-sentence argument that the district court erred by denying his request under Fed. R. Civ. P. 60(b) to reopen discovery and to allow him to "submit newly discovered evidence . . . that was paramount in helping prove" his conspiracy and conversion claims. Aplt. Opening Br. at 16. We decline to address this unsupported and conclusory claim. *See* Fed. R. App. P. 28(a)(8)(A) (requiring citations to authorities supporting each argument); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (declining to consider arguments inadequately presented in appellant's opening brief). In any event, new facts about

19

the substance of the claims would not have affected the district court's conclusion that the claims were time-barred.

### 5. Dismissal of Conspiracy Claim as Not Separately Actionable

The district court also dismissed the conspiracy claim on the ground that under New Mexico law, civil conspiracy is not actionable as a separate claim. *See Ettenson v. Burke*, 17 P.3d 440, 445, 448 (N.M. 2000) (explaining that civil conspiracy is a "derivative claim" that "requires an overt tortious act independent of the conspiracy," and that "[w]ithout an actionable civil case against one of the conspirators, . . . an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense" (internal quotation marks omitted)). Roberts challenges that ruling, but because we have concluded the court properly dismissed the claim as time-barred, we need not address the parties' arguments about this alternative basis for dismissal. *See Trevizo v. Adams*, 455 F.3d 1155, 1160 n.3 (10th Cir. 2006).

### 6. Grant of Summary Judgment Without a Hearing

Roberts does not challenge the substance of the district court's summary judgment order but argues that the court erred by denying his request for a hearing on the motion. An evidentiary hearing is not required when the plaintiff's claims can be decided as a matter of law and the parties' pleadings establish that the defendants are entitled to summary judgment. *See Kennedy v. Meacham*, 540 F.2d 1057, 1061 n.3 (10th Cir. 1976) (explaining that a hearing "is [not] required in every instance"). Roberts maintains that a hearing would have been "beneficial," Aplt. Opening Br. at

16, but he has not established that a hearing was necessary and that the district court abused its discretion by not holding one.

### 7. Denial of Motion for Preliminary Injunction

After the district court entered its orders dismissing most of Roberts' claims against most defendants, he filed a motion seeking an injunction to prevent the removal of any gold and artifacts from Black Mesa until the case was fully litigated in both the district court and on appeal. The district court denied the motion, concluding Roberts had not shown a likelihood of success on the merits. *See State v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021) (setting forth requirements for obtaining preliminary injunction that changes the status quo).

Roberts takes issue with that ruling, but his appeal of that order is moot given that the district court has entered a final judgment on the merits and the effective time period of the requested injunction has passed. *See United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1512 (10th Cir. 1988) (explaining that a preliminary injunction is by its nature a temporary measure intended to furnish provisional protection while awaiting a final judgment on the merits and that entry of final judgment mooted appeal of preliminary injunction); *Baker v. Bray*, 701 F.2d 119, 122 (10th Cir. 1983) (dismissing appeal of preliminary injunction ruling as moot where district court later dismissed the underlying claim).

### 8. Additional Issues

Roberts asks this court to "prevent . . . Patterson from making threats to [Roberts'] witnesses" and "posting derogatory statements about . . . Roberts" on

21

social media.  Aplt. Opening Br. at 26.  This court does not have jurisdiction to order such relief.  Accordingly, the request is denied.

The Cook Defendants argue that this appeal is frivolous and seek an award of damages and costs under Fed. R. App. P. 38, and attorney's fees under 28 U.S.C. § 1927.  Initially, we note that there is a split "among the circuits on the question whether § 1927 applies to *pro se* litigants."  *See Alexander v. United States*, 121 F.3d 312, 316 (7th Cir. 1997).  Although we have not squarely decided that question, we have commented that § 1927 "is a natural outgrowth of the inherent authority of a court to assess costs and attorney's fees against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" and that "awards under § 1927 are made only against attorneys."  *Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 n.9 (10th Cir. 2000) (ellipsis and internal quotation marks omitted).  In any event, the decision whether to impose sanctions for a frivolous appeal is discretionary, *see Roth v. Green*, 466 F.3d 1179, 1188 (10th Cir. 2006), and we decline to do so here.

## Conclusion

The district court's dismissal and summary judgment orders are affirmed.

Entered for the Court


Bobby R. Baldock
Circuit Judge

22